STOUFFER FOOD CORPORATION
and/or Liberty Mutual Insurance
Company, Petitioners,

v.

LABOR COMMISSION; Employers' Reinsurance Fund; and Kathleen Mae Moore, surviving spouse of William Moore, Respondents.

No. 981227–CA.

Court of Appeals of Utah.

Dec. 17, 1998.

Michael E. Dyer and Dori K. Petersen, Blackburn & Stoll, LC, Salt Lake City, for Petitioners Stouffer Food Corporation and Liberty Mutual Insurance Company.

Alan Hennebold and Richard Lajeunesse, Salt Lake City, for Respondent Labor Commission.

Erie V. Boorman, Salt Lake City, for Respondent Employers' Reinsurance Fund.

Before DAVIS, P.J., BILLINGS, and GREENWOOD, JJ.

## OPINION

DAVIS, Presiding Judge:

This matter is before the court on a petition for review of a determination by the Appeals Board of the Labor Commission of Utah. Liberty Mutual Insurance Company (Liberty) and Stouffer Food Corporation (Stouffer) seek review of the Appeals Board's ruling that Liberty, Stouffer's insurance carrier, is responsible for continuing death benefit payments to Kathleen Mae Moore beyond the initial 312–week period after the injury to her husband, William Ray Moore.

## BACKGROUND

On July 1, 1989, William Ray Moore, an employee of Stouffer, suffered a severe on-the-job injury. Mr. Moore received temporary total disability benefits, temporary partial disability benefits, and permanent partial disability benefits from Liberty at various times following his injury through May 13, 1991. On that date, Mr. Moore died as a result of complications from his injury. Kathleen Mae Moore is the surviving spouse of Mr. Moore. As an individual "wholly de-

pendent"[1] under section 35–1–68(2)(a)(i) of the Utah Code,[2] Ms. Moore began receiving death benefit compensation from Liberty on May 13, 1991. Pursuant to statute, "the employer or insurance carrier" was required to pay compensation to Ms. Moore "for the remainder of the period between the date of the death and the expiration of six years or 312 weeks after the date of the injury." Utah Code Ann. § 35–1–68(2)(a)(i) (1988).

At the expiration of the initial 312 weeks, the Labor Commission of Utah (Commission) received a Declaration of Dependency from Ms. Moore claiming continuing dependency on the death benefits paid by Liberty. The Commission, pursuant to section 35–1–68 of the Utah Code, then issued an order requiring Liberty to continue paying death benefits beyond the initial 312–week period. Liberty objected, but agreed to continue death benefit compensation by stipulation while the parties sought a legal interpretation of whether Ms. Moore's ongoing death benefits should be paid by Liberty or the Employers' Reinsurance Fund (ERF). Liberty then filed a letter with the Commission contesting its determination that Liberty was required to pay the continuing benefits; asserting instead that section 35–1–70 of the Utah Code required the ERF to pay the ongoing benefits. The Commission's Administrative Law Judge (ALJ) determined that, at the time of the deceased's industrial injury in 1988, the death benefits statutory scheme specified that the employer/carrier was liable for continuing compensation to a wholly dependent individual after the initial 312–week period. Stouffer and Liberty (petitioners) appealed that decision to the Appeals Board, which affirmed and adopted the ALJ's determination. Petitioners now request that this court review the Board's determination.

## ISSUE AND STANDARD OF REVIEW

The issue before this court is whether, pursuant to statute, petitioners are liable for

death benefit payments to Ms. Moore beyond the initial 312 weeks after Mr. Moore's injury or whether the ERF is responsible for the same. The facts of the case are not disputed. Therefore, the only issue this case presents is whether the Commission properly interpreted the relevant statutes. "This is a question of statutory construction" which we review under a " 'correction of error' " standard. *Brown & Root Indus. Serv. v. Industrial Comm'n,* 947 P.2d 671, 675 (Utah 1997). "[Q]uestions of statutory construction are matters of law for the courts, and we ... accord[ ] no deference to an administrative agency's interpretation." *Chris and Dick's Lumber & Hardware v. Tax Comm'n,* 791 P.2d 511, 513 (Utah 1990).

## ANALYSIS

The parties agree that, pursuant to section 35–1–68, from 1973 until 1979 the ERF and/or its predecessor was responsible for death benefit payments to wholly dependent individuals after the initial 312 weeks of mandatory payments. In addition, it is undisputed that the 1979 amendments to section 35–1–68 were intended to shift liability for death benefit payments to the employer/carrier after the initial 312–week period. Petitioners assert, however, that the Legislature's intention was not reflected in the statute and further, that the plain language of the statute clearly and unambiguously relieves the employer/carrier from responsibility for death benefit payments beyond the initial 312 weeks. When "[f]aced with a question of statutory construction, we first examine the plain language of the statute." *Olsen v. Samuel McIntyre Inv. Co.,* 956 P.2d 257, 259 (Utah 1998). It is well settled that "[w]e do not look beyond the plain language unless we find ambiguity." *Id.* Accordingly, we begin

---

**1.** It is undisputed by the parties that at all times during the proceedings, Ms. Moore's status is that of a "wholly dependent" individual for the purpose of receiving ongoing death benefits under section 35–1–68(2)(a)(i) of the Utah Code.

**2.** Both parties agree that "[i]n workers' compensation cases, we determine the rights and liabilities of the parties as of the date when the acci-

dent at issue occurred." *Moore v. American Coal Co.,* 737 P.2d 989, 990 (Utah 1987). Because Mr. Moore's injury occurred in 1989, our analysis is governed by sections 35–1–68 and 35–1–70 of the Utah Code, *see* Utah Code Ann. §§ 35–1–68, –70 (1988), recodified at Utah Code Ann. § 34A–2–702 (1997) and § 34A–2–416 (1997), respectively.

our analysis by examining the plain language of the relevant statutes.

## I. Plain Language

■ "It is well established that a statute should be read as a whole." *Cathco, Inc. v. Valentiner Crane Brunjes Onyon Architects,* 944 P.2d 365, 369 (Utah 1997). At the time of Mr. Moore's injury, section 35–1–68 provided as follows:

> (1) There is created an Employers' Reinsurance Fund for the purpose of making payments in accordance with Chapters 1 and 2, Title 35. This fund shall succeed to all monies previously held in the "Special Fund," the "Combined Injury Fund," or the "Second Injury Fund".... 
> (2) If injury causes death within a period of six years from the date of the accident, the *employer or insurance carrier shall pay ... benefits in the amounts and to the persons as follows:*
> (a)(i) If there are wholly dependent persons at the time of the death, the payment by the employer or its insurance carrier shall be 66 2/3% of the decedent's average weekly wage at the time of the injury.... Compensation shall continue during dependency for the remainder of the period between the date of the death and the expiration of six years or 312 weeks after the date of injury.
> (ii) The weekly payment to wholly dependent persons *during dependency following the expiration of the first six-year period described in Subsection (2)(a)(i) shall be an amount equal to the weekly benefits paid to those wholly dependent persons during that initial six-year period* ....

Utah Code Ann. § 35–1–68 (1988) (emphasis added). Section 35–1–68(2)(a)(i) calculates the employer or insurance carrier's death benefit payments to wholly dependent persons for the first 312 weeks following the deceased's injury. *See id.* § 35–1–68(2)(a)(i). Section 35–1–68(2)(a)(ii), meanwhile, calculates the amounts paid after the first six-year period, without specifying which party is responsible for the payments. *See id.* § 35–1–68(2)(a)(ii). Although this portion of the stat-

ute, read alone, suggests that it is the "employer or its insurance carrier" that is responsible for death benefit payments to the dependent beneficiary after the initial payment period, a further reading of Title 35, Chapter 1 suggests otherwise. Section 35–1–70 reads:

> If any wholly dependent persons who have been receiving the benefits of this title, at the termination of such benefits are yet in a dependent condition, and under all reasonable circumstances should be entitled to additional benefits, the industrial commission may, in its discretion, extend indefinitely such benefits; *but the liability of the employer or insurance carrier involved shall not be extended, and the additional benefits allowed shall be paid out of the special fund*[3] *provided for in Subdivision (1) of Section 35–1–68.*

*Id.* § 35–1–70 (emphasis added). Section 35–1–70 appears to be inconsistent with section 35–1–68 by purporting to restrict employer and insurance carrier liability to the initial 312 weeks. In addition, there is no explicit language in either provision indicating which party is responsible for death benefit payments beyond the initial payment period. The plain language of the pertinent statutory provisions is, as observed by the ALJ, "not a model of clarity."

To support their argument that the plain language of the statutes mandate ERF liability for death benefit payments beyond the initial 312–week period, petitioners assert a number of propositions. First, petitioners maintain that the 1988 version of section 35–1–68 includes language that has a limiting effect on employer/carrier liability, thereby strengthening the mandate of section 35–1–70. This language reads as follows: "Compensation shall continue during dependency for the remainder of the period between the date of the death and the expiration of six years or 312 weeks after the date of the injury." *Id.* § 35–1–68(2)(a)(i). When read separately from the rest of the statutory scheme, the provision appears to comport with petitioners' interpretation. However,

---

**3.** References to the "Special Fund," the "Combined Injury Fund," or the "Second Injury Fund" are permutations of what is now referred to as the Employers' Reinsurance Fund.

when the statute is read in its entirety, the 312–week period appears to be the minimum mandatory time-frame within which an employer/carrier must make death benefit payments to a wholly dependent individual. At the end of the initial payment period, the statute calls for an annual review of the beneficiary's dependency status. "If in any such review it is determined that, under the facts and circumstances existing at that time, the applicant is no longer a wholly dependent person, the applicant may be considered a partly dependent or nondependent person and shall be paid such benefits as the commission may determine...." *Id.* § 35–1–68(2)(a)(iii). The statutory framework of death benefit liability is such that the employer/carrier is responsible for payments during the first 312 weeks after the employee's injury. However, the issue of responsibility for the ongoing death benefits following the dependency review called for in section 35–1–68(2)(a)(iii) is left unresolved.

Next, petitioners assert that the following specific language from section 35–1–68(1) indicates that liability for continuing death benefits has not shifted from the ERF to the employer/carrier: "There is created an Employers' Reinsurance Fund for the purpose of making payments in accordance with Chapters 1 and 2, Title 35. This fund shall succeed to all monies previously held in the 'Special Fund,' the 'Combined Injury Fund,' or the 'Second Injury Fund.' " *Id.* § 35–1–68(1). Petitioners submit that the express language of this provision recognizes that the ERF was created for making payments and further, if the Utah Legislature had intended to eliminate the ERF's death benefit liability, it could have done so within the body of the statute. Petitioners argue that because there is no restriction on ERF death benefit liability and because employer/carrier liability has been explicitly restricted by section 35–1–70, the ERF should be responsible for death benefit payments beyond the initial 312–week period. Respondents reply by urging that although the ERF was created in 1979 in order to make payments, those payments are only for ongoing liabilities incurred prior to the 1979 amendments to section 35–1–68. Notwithstanding the arguments of the parties, the intended effect of

the ERF's creation was apparently to simplify issues of statutory liability by consolidating liabilities incurred by the three funds into one; its actual effect on the ERF's liability for death benefit payments, in light of the whole statute, is unclear.

Lastly, petitioners argue that because the Legislature explicitly referred to the employer/carrier as the responsible party for making payments to partly dependent persons pursuant to section 35–1–68(2)(b)(iii), the Legislature must not have intended for employer/carrier liability to continue implicitly throughout the previous part of the statute. The pertinent language reads: "Payments under this section shall be paid to such persons during their dependency by the employer or its insurance carrier." *Id.* § 35–1–68(2)(b)(iii). Respondents reply to petitioners' assertion by arguing that the language from this portion of the statute is not intended to apply only to partly dependent persons; asserting instead that it is a blanket provision applicable to section 35–1–68 in its entirety. We find the plain language of this provision to be unclear in its purpose and uncertain in its applicability.

Another indication that the 1988 versions of section 35–1–68 and section 35–1–70 are uncertain in their application is the fact that the language of the latter specifies that "the industrial commission *may, in its discretion,* extend indefinitely" benefits to wholly dependent persons. *Id.* § 35–1–70 (emphasis added). Meanwhile, the earlier amendments to section 35–1–68 made death benefit payments to wholly dependent individuals automatic. *See id.* § 35–1–68(2)(a)(ii) (stating that "[t]he weekly payment to wholly dependent persons during dependency following the expiration of the first six-year period ... *shall be* an amount equal to the weekly benefits paid ... during that initial six-year period" (emphasis added)). Based on a plain reading of the statutory language it is unclear whether payments are discretionary or automatic. Section 35–1–70's discretionary payments to wholly dependent individuals appear to contradict more recent amendments to the death benefit statutory scheme as reflected in section 35–1–68, creating doubt as to the application of the statute.

Based on the foregoing, we hold that the statutory scheme in place at the time of Mr. Moore's injury, when read as a whole, includes ambiguous and arguably conflicting provisions rendering the application of the statutory provisions uncertain.

## II.  Purpose and Intent

"In light of the ambiguity created by th[e] conflict between different statutory provisions, we examine[ ] the overall purpose and intent." *Nixon v. Salt Lake City Corp.*, 898 P.2d 265, 269 (Utah 1995); *see also State v. Souza*, 846 P.2d 1313, 1317, (Utah Ct.App. 1993) (stating that because "there is doubt or uncertainty as to the meaning or application of the provisions of [the statute], it is appropriate to analyze [it] in its entirety, in light of its objective, and to harmonize its provisions in accordance with its intent and purpose" (citation and quotation marks omitted)). Petitioners agree that the Legislature's intent in 1979 was to shift responsibility for death benefit payments beyond the initial 312–week period to the employer/carrier. A review of the 1979 Senate discussion regarding the amendments to section 35–1–68 provides insight into the statute's purpose. Senator Cornaby noted that "[a]t the present time the fund has become actuarially unsound and is getting further into an unsound position. The purpose of this bill is to correct that situation by ... shifting the burden from the second injury fund." Senate Debate Hearings: Recording of Utah Senate Floor Debates, 43rd Legislature (February 16, 1979). Senator Bunnell added the following:

As I understand this bill, first it takes the spouse, the beneficiary[,] out of the second injury fund and *requires that the employer or the insurance company who had the original insurance will have to continue to pay those benefits* .... That's roughly the purpose of this, and if we don't do that there isn't going to be any money in the second injury fund to pay anyone so I would urge the support of this bill.

*Id.* (emphasis added).

We further discern the legislative purpose by examining the 1979 amendments to section 35–1–68. The 1979 recodification (the language of which was still in effect in 1989) added new language regarding payment of continuing death benefits by the employer/carrier. The reorganization of the subsections placed the new language regarding payment of benefits beyond the initial 312–week period under the general language describing the liability of the employer/carrier. *See* Workmen's Compensation Act, ch. 138, § 3, 1979 Utah Laws 773, 777.

In addition to the added language, language that was previously in the statute, specifically stating that the "special fund," or ERF, was to pay continuing death benefits, was eliminated by the 1979 amendments. The removed language read:

Following the period during which the employer or its insurance carrier is required to pay benefits under this act, there shall be paid to such persons, during the period of their dependency, out of the special fund provided for in subsection (1), the same benefits as paid by the employer or its insurance carrier....

Workmen's Compensation Act, ch. 138, § 3, 1979 Utah Laws 773, 778 (interlined language). The effect of these two 1979 amendments indicates the legislature's intent to shift the liability for death benefit payments beyond the initial 312–week period from the ERF to the employer/carrier. That intent has manifested itself in the current version of section 35–1–68, recodified in 1994. The 1994 codification established unequivocally that it is "the employer or its insurance carrier" who is responsible for payment "to wholly dependent persons during dependency following the expiration of the first 312–week period." Utah Code Ann. § 34A–2–702(5)(a)(iii) (1997).

This is not the first time this court has addressed the efficacy of section 35–1–70. In *Hales v. Industrial Commission of Utah,* we noted that the legislative changes from 1973 and afterward made section 35–1–70 virtually obsolete.

Admittedly, under the present statutory scheme in which the extension of benefits beyond the six-year period is no longer discretionary with the Commission so long as death benefit recipients remain dependent, section 35–1–70 would rarely, if ever, be applied. It appears the section escaped

repeal, as no longer necessary, by virtue of its separate section status. As a glance at the annotation notes will show, the Legislature has repeatedly tinkered with section 35–1–68, unmindful that, from 1973 on, those changes rendered section 35–1–70, to which no particular legislative attention seems to have been paid for over seven decades, quite unnecessary.

*Hales v. Industrial Comm'n,* 854 P.2d 537, 542 n. 7 (Utah Ct.App.1993).

 Petitioners argue that our observation in *Hales* underscores section 35–1–70's applicability to their situation because the provision would otherwise have little or no effect, yet remains good law. Section 35–1–70 has not, however, become obsolete. The provision still has some efficacy not inconsistent with the intent of the 1973 and subsequent amendments to section 35–1–68. The current version of section 35–1–70 reads as follows:

> 1) An administrative law judge may extend indefinitely benefits received by a wholly dependent person under this chapter ... if at the termination of the benefits:
>
> (a) the wholly dependent person is still in a dependent condition; and
>
> (b) under all reasonable circumstances the wholly dependent person should be entitled to additional benefits.

Utah Code Ann. § 34A–2–416 (1997). If benefits are extended under subsection (1), the employer/carrier will not be liable for extended payments; that burden will fall upon the ERF. *See id.* There appear to be circumstances in which benefits are not automatically extended but may be extended indefinitely by the ALJ: First, in the case of children, when marriage, attainment of the age of 18 years, or termination of dependency of the minor child does not alter the child's status as a wholly dependent individual; and second, when divorce or remarriage of the spouse of the employee does not alter his or her status as a wholly dependent individual. *See id.* § 34A–2–415. When one of the above circumstances is coupled with a situation when "under all reasonable circumstances the wholly dependent person should be entitled to additional benefits[,]" the ERF

is liable for continuing benefits. *See id.* § 34A–2–416. Thus, section 35–1–70 and its recodifications had, and continue to have, a place in the statutory scheme despite the 1973 amendments which made extended death benefit payments to wholly dependent persons automatic.

## CONCLUSION

 We hold that at the time applicable to this case, the plain language of sections 35–1–68 and 35–1–70 was ambiguous and unclear in its application. In light of the legislative history and the undisputed intent of the Legislature to shift liability for death benefit payments beyond the initial 312–week period from the ERF to the employer/carrier, we uphold the Board's determination that Liberty is responsible for the ongoing death-benefit payments to Ms. Moore.

The Board's determination is affirmed.

BILLINGS, Judge, and GREENWOOD, Judge, concur.