Judean S. OLSEN, widow of Gregory
J. Olsen, deceased, Respondent,

v.

SAMUEL McINTYRE INVESTMENT
CO., Workers' Compensation Fund of
Utah, and Industrial Commission of
Utah, Petitioners.

No. 970127.

Supreme Court of Utah.

April 3, 1998.

Eugene C. Miller, Jr., Salt Lake City, for respondent.

Sandra N. Dredge, Gerald J. Lallatin, Provo, for Workers' Compensation Fund Alan Hennebold, Salt Lake City, for Industrial Commission.

ZIMMERMAN, Justice:

Defendants Samuel McIntyre Investment Company, the Utah Workers' Compensation Fund of Utah, and the Industrial Commission of Utah (collectively, "McIntyre Investment Co.") sought review of the court of appeals' decision granting workers' compensation death benefits to plaintiff Judean Olsen, the widow of Gregory Olsen. The court of appeals held that Mr. Olsen was a statutory employee at the time of his death because Samuel McIntyre Investment Company, of which he was president, had not given written notice of its election to exclude him from workers' compensation coverage to both its insurance carrier, the Utah Workers' Compensation Fund, and the Industrial Commission, as required by section 35–1–43(3)(b) of the Utah Code. Instead, McIntyre had given notice only to its insurance carrier. The court of appeals rejected retroactive application or amendment to section 35–1–43; the statute now allows a corporation to exclude a director or an officer from coverage by giving written notice only to its insurance carrier.[1] On review, McIntyre challenges the court of appeals' legal conclusions. We affirm.

In 1993, Gregory Olsen, acting as president of Samuel McIntyre Investment Co. ("the corporation"), gave written notice to the Workers' Compensation Fund of Utah ("the Fund"), the corporation's insurance carrier, of the corporation's intent to exclude him as an employee for workers' compensation purposes. This election to exclude is permitted by section 35–1–43(3)(b) of the Code. The corporation did not send written notice to the Industrial Commission. After the Fund received the notice, it notified the corporation that it no longer insured Olsen, modified the corporation's insurance policy to exclude Olsen, and reduced the premiums charged to the corporation. The Fund then sent the Industrial Commission a magnetic computer tape containing the information that it no longer insured Olsen. The information on the magnetic tape was the only information the Industrial Commission received regarding Olsen's exclusion.

On June 3, 1994, while acting in the course of his employment, Mr. Olsen was killed in an automobile/train accident. Mrs. Olsen and her three minor children applied for death benefits pursuant to section 35–1–45 of the Utah Code.[2] *See* Utah Code Ann. § 35–

---

1. The legislature has since renumbered section 35–1–43; it is now located at section 34A–2–104 of the Utah Code.

2. This provision is now found at section 34A–2–414 of the Utah Code.

1–45 (1994) (providing that dependents of employees defined by section 35–1–43 shall receive benefits for death of employee occurring in course of employment). The Fund denied Mrs. Olsen's claim for benefits because of the corporation's exclusion of Mr. Olsen as an employee for workers' compensation purposes. Mrs. Olsen sought review, and an administrative law judge found the corporation and the Fund liable because section 35–1–43(3)(b) of the Code required the corporation to give separate written notice to both the Fund and the Industrial Commission. The Industrial Commission reversed the administrative law judge's decision and denied Mrs. Olsen's claim. The Industrial Commission ruled that the corporation satisfied the statute's notice requirements, reasoning that section 35–1–43(3)(b) did not require separate written notice and that the Industrial Commission received sufficient notice from the Fund's magnetic tape. Because the Commission's decision was based on the original version of the statute, it did not address McIntyre Investment Co.'s argument that the amended version of section 35–1–43, which eliminated the provision requiring the employer to provide notice to the Commission, should be applied retroactively.

The Utah Court of Appeals reversed the Industrial Commission. The court of appeals held that the plain and unambiguous language of section 35–1–43(3)(b) required the corporation to give written notice to both the Industrial Commission and the Fund, that the corporation failed to give written notice to the Commission, and therefore that Mrs. Olsen was entitled to death benefits. The court of appeals also refused to apply retroactively the amended version of section 35–1–43. We granted certiorari. In this court, McIntyre Investment Co. makes the same arguments presented below.

■ We review the court of appeals' interpretation of section 35–1–43(3)(b) for correctness. *See City of South Salt Lake v. Salt Lake County,* 925 P.2d 954, 957 (Utah 1996) (citing *State v. Pena,* 869 P.2d 932, 936 (Utah 1994)). Faced with a question of statutory construction, we first examine the plain language of the statute. *See Stephens v. Bonneville Travel, Inc.,* 935 P.2d 518, 520 (Utah 1997). We do not look beyond the plain language unless we find ambiguity. *See id.; see also World Peace Movement of Am. v. Newspaper Agency Corp.,* 879 P.2d 253, 259 (Utah 1994) ("Only when we find ambiguity in the statute's plain language need we seek guidance from the legislative history and relevant policy considerations."). Because we assume that the legislature used each term in the statute advisedly, we read the statute's words literally "unless such a reading is unreasonably confused or inoperable." *Savage Indus., Inc. v. Utah State Tax Comm'n,* 811 P.2d 664, 670 (Utah 1991).

Reviewing its language, we conclude that section 35–1–43(3)(b) is unambiguous. It provides:

A corporation may elect not to include any director or officer of the corporation as an employee under this chapter. If a corporation makes this election, it shall serve written notice upon its insurance carrier and upon the commission naming the persons to be excluded from coverage. A director or officer of a corporation is considered an employee under this chapter until this notice has been given.

Utah Code Ann. § 35–1–43(3)(b). This language requires an employer to serve written notice on *both* its insurance carrier *and* the Industrial Commission.

McIntyre Investment Co. argues that the corporation satisfied section 35–1–43's notice requirements, even though it did not send written notice to the Industrial Commission, because (i) the information contained on the magnetic tape constituted "written notice" and (ii) constructive notice of the corporation's intent to exclude Mr. Olsen satisfied the statute's notice requirements. We disagree.

■ First, information contained on a magnetic tape is not "written notice." Section 68–3–12 of the Code provides that in construing statutes, a court should read "writing" as including "printing, handwriting, and typewriting." Utah Code Ann. § 68–3–12(2)(cc). Moreover, *Black's Law Dictionary* defines "writing" as "[t]he expression of ideas by letters visible to the eye. The giving of an outward objective form to a con-

tract, will, etc., by means of letters or marks placed on paper, parchment, or other material substance." *Black's Law Dictionary* 1609 (6th ed. 1990). Information stored on a magnetic tape is not visible to the eye and is not typically considered printing, handwriting, or typewriting. A magnetic tape does not fall within the traditional definition of a writing, and therefore, we do not consider the information contained on it to be "written." As always, the legislature can define "written" to include information conveyed by electronic means.[3] It simply has not done so here.

■ Even if the information on the magnetic tape constituted written notice, the corporation still did not comply with section 35–1–43(3)(b)'s requirements because the Fund, not the corporation, sent the magnetic tape to the Industrial Commission. The plain language of the statute requires the employer to send the notice to the Commission.

■ We next address the claim that constructive notice to the Industrial Commission satisfies section 35–1–43's notice requirements.[4] McIntyre Investment Co. relies on *Utah State Insurance Fund v. Dutson*, 646 P.2d 707 (Utah 1982). In *Dutson*, we held that "a claim for [workers'] compensation [benefits] need not bear any particular formality" even though the statute governing the filing of claims required notice in writing. *Id.* at 709 (interpreting Utah Code Ann. §§ 35–1–99, –100). In so concluding, we recognized that the court must indulge " 'great liberality as to form and substance of an application for compensation.' " *Id.* (quoting *Palle v. Industrial Comm'n*, 79 Utah 47, 7 P.2d 284, 286 (1932)). However, this case does not involve a claim for compensation. Instead, this case involves the form of notice for *excluding* an employee from coverage.

■ This court construes workers' compensation statutes liberally in favor of finding employee coverage. In *Heaton v. Second Injury Fund*, 796 P.2d 676 (Utah 1990), we stated, "It is the duty of the courts and the commission to construe the Workers' Compensation Act liberally and in favor of employee coverage when statutory terms reasonably admit of such a construction." *Id.* at 679; *see also Pinter Constr. Co. v. Frisby*, 678 P.2d 305, 306–07 (Utah 1984) ("The Work[ers'] Compensation Act is to be construed liberally to further the statutory purposes of providing relief from injuries caused by industrial accidents."). Allowing exclusion of a director from coverage on the basis of constructive notice would be to construe the Workers' Compensation Act liberally against coverage. This we will not do. We find that constructive notice is not a substitute for the written notice required by section 35–1–43(3)(b).

■ McIntyre's final contention is that Mrs. Olsen is not entitled to benefits because the amended version of section 35–1–43, which does not require dual notice, applies retroactively. In 1995, the Utah legislature amended section 35–1–43 to read:

A corporation may elect not to include any director or officer of the corporation as an employee under this Chapter. If a corporation makes this election, it shall serve written notice upon its insurance carrier naming the persons to be excluded from coverage. A director or officer of a corporation is considered an employee under this Chapter until notice has been given.

Utah Code Ann. § 35–1–43(4).[5] McIntyre argues that this amendment should apply

---

3. In fact, the legislature recently amended two statutes to reflect a change in the definition of "written." In 1996, the legislature amended the definition of "writing" in the forgery statute to include "electronic storage or transmission." *See* Utah Code Ann. § 76–6–501(2) (Supp.1997). The legislature also amended the general definitions section of the criminal code, adding a section defining "written" as "any handwriting, typewriting, printing, electronic storage or transmission, or any other method of recording information or fixing information in a form capable of

being preserved." Utah Code Ann. § 76–1–601(12) (Supp.1997).

4. Because we conclude that constructive notice cannot satisfy section 35–1–43's requirements, we need not address whether the Industrial Commission had constructive notice.

5. The 1995 amendment also renumbered the section containing the language at issue from section 35–1–43(3)(b) to section 35–1–43(4). In 1996, the legislature renumbered the section with the corporate exclusion language, placing

retroactively because the amendment was purely procedural. We disagree.

A long-standing rule of statutory construction is that we do not apply retroactively legislative enactments that alter substantive law or affect vested rights unless the legislature has clearly expressed that intention. *See Brown & Root Indus. Serv. v. Industrial Comm'n*, 947 P.2d 671, 675 (Utah 1997); *Roark v. Crabtree*, 893 P.2d 1058, 1061 (Utah 1995) (citing *Madsen v. Borthick*, 769 P.2d 245, 253 (Utah 1988)). Section 68–3–3 of the Code embodies this rule: "No part of these revised statutes is retroactive, unless expressly so declared." Utah Code Ann. § 68–3–3 (1996); *see also Cache County v. Property Tax Div.*, 922 P.2d 758, 767 (Utah 1996) (citing Utah Code Ann. § 68–3–3). Accordingly, in workers' compensation cases, we generally apply the law in effect at the time of the employee's injury. *See Brown & Root Indus. Serv.*, 947 P.2d at 675; *Moore v. American Coal Co.*, 737 P.2d 989, 990 (Utah 1987). We also presume that when the legislature amends a statute, it intended the amendment "'to change existing legal rights.'" *Visitor Info. Ctr. v. Customer Serv. Div.*, 930 P.2d 1196, 1198 (Utah 1997) (quoting *Madsen*, 769 P.2d at 252 n. 11).

An exception to the general rule against retroactivity applies to changes which are procedural only, *see Roark*, 893 P.2d at 1062, or amendments which clarify statutes. *See Keegan v. State*, 896 P.2d 618, 620 (Utah 1995). This court, however, "narrowly draw[s] the boundaries of what constitutes a procedural statute." *Salt Lake Child & Family Therapy Clinic v. Frederick*, 890 P.2d 1017, 1020 n. 3 (Utah 1995). Procedural law "prescribes the practice and procedure or the legal machinery by which the substantive law is determined or made effective." *Petty v. Clark*, 113 Utah 205, 192 P.2d 589, 594 (1948); *see also Roark*, 893 P.2d at 1062. In contrast, substantive law "creates, defines and regulates the rights and duties of the parties which may give rise to a cause of action." *Petty*, 192 P.2d at 593.

We conclude that the amendments to section 35–1–43(3)(b) were substantive because this section created and regulated the rights and duties of the parties. The statute specifies the notice requirements that a corporation must meet. Importantly, the statute also clearly states that an employee's coverage under the workers' compensation laws continues until the corporation has met the notice requirements. Applying the less rigorous notice requirements of the amended statute would alter Mrs. Olsen's and her children's rights as dependents.

> A dependent's right to work[ers'] compensation death benefits is created and defined by statute. The right of a worker's dependents to death benefits is an original and independent right, separate from the worker's right to benefits for injuries he suffers in an industrial accident. The dependent's right is not derived from the right of an employee to compensation benefits. The right to death benefits vests at the death of the worker pursuant to the Work[ers'] Compensation Act, which creates that right.

*Alvarez Martinez v. Industrial Comm'n*, 720 P.2d 416, 417 (Utah 1986) (internal citations omitted). Because the corporation failed to comply with the statute's notice requirements, Mr. Olsen was a covered employee at the time of his death. Upon his death, his dependents' right to receive death benefits pursuant to section 35–1–45 vested. Retroactive application of the amended version of section 35–1–43 would operate to eliminate the vested right. We decline to do so, and therefore, Mrs. Olsen and her children are entitled to death benefits.

Affirmed.

HOWE, C.J., and STEWART, DURHAM and RUSSON, JJ., concur in Justice ZIMMERMAN'S opinion.

the language in section 35A–3–104 of the Utah Code. In 1997, the legislature again renumbered the section, moving section 35A–3–104 to section 34A–2–104.