2000 UT 2

**J. David VIGOS, Petitioner,**

v.

**MOUNTAINLAND BUILDERS, INC., and Workers' Compensation Fund of Utah, Respondents.**

No. 970175.

Supreme Court of Utah.

Jan. 7, 2000.

Eugene C. Miller, Jr., Salt Lake City, for Vigos.

Alan Hennebold, Salt Lake City, for Ind. Comm'n.

James R. Black, Salt Lake City, for Mountainland Builders and Workers' Compensation Fund.

David W. Parker, Salt Lake City, for amicus Utah Citizens' Alliance.

STEWART, Justice:

¶ 1 This case is here on a writ of certiorari to the Utah Court of Appeals. At issue is the effect of the six-year limitations period in Utah Code Ann. § 35–1–99(3) (1988)[1] of the

---

**1.** The Legislature relocated and renamed this

statute: section 35–1–98(2) in 1990, section 35A–

Workers' Compensation Act ("Act") that governs claims for permanent total disability, and Utah Code Ann. § 35–1–78 that provides for continuing jurisdiction of the Industrial Commission. An administrative law judge dismissed petitioner J. David Vigos' request for permanent total disability benefits because the request was filed more than six years after the industrial accident that initially gave rise to Vigos' workers' compensation claim. The Industrial Commission denied Vigos' motion for review, and the Court of Appeals affirmed. We reverse and remand.

## I.

¶ 2 On October 13, 1988, Vigos fell and injured his head and back while working for Mountainland Builders, Inc., a construction company. Mountainland filed a timely report of injury with the Workers' Compensation Fund of Utah (the "Fund") and the Commission. Vigos' physician also filed a timely physician's initial report of work injury with the Fund and the Commission. Vigos did not, however, file an application for hearing with the Commission in 1988.

¶ 3 The Fund voluntarily paid Vigos temporary total disability benefits from October 14, 1988, to May 8, 1989, as well as medical expenses through July 1989. A clinical psychologist, David G. Ericksen, Ph.D., evaluated Vigos in early 1989 and reported that in light of his injuries he should pursue a slow-paced, structured line of work and increase his responsibility and workload as appropriate. He implied that Vigos could eventually return to "his full level of previous functioning." Vigos was told he could return to work without restrictions on May 8, 1989. He was not told he could receive, and he did not receive, an impairment rating, and he had no indication from physicians of permanent disability.

¶ 4 Eventually, Vigos attempted to rehabilitate himself by continuing to work. From 1989 to 1994, he worked at various jobs but was unable to hold any of them. In 1994, he realized that his 1988 accident had caused him a permanent disability. On January 25, 1994, Vigos applied to the Social Security Administration for disability benefits. His request was denied twice but was finally granted on June 23, 1995. On October 25, 1994 (during Vigos' request for reconsideration before the Social Security Administration), he sought payment for additional medical treatment from the Fund. It denied his request November 3, 1994, under Utah Code Ann. § 35–1–98(1) (1994),[2] because more than three years had passed after his last medical treatment.

¶ 5 On July 11, 1995, almost six years and nine months after his accident, Vigos filed an "Application for Hearing—Form 001" with the Commission requesting medical expenses, temporary and permanent total disability benefits, and travel expenses. The Fund answered that Vigos' claim was filed more than six years after his accident and was barred by section 35–1–99(3), the Act's statute of limitations. The administrative law judge dismissed Vigos' claim under section 35–1–99(3). The Commission affirmed the ALJ's dismissal, and the Court of Appeals affirmed the Commission's order. The Court of Appeals held that under *Avis v. Industrial Commission*, 837 P.2d 584 (Utah Ct.App.1992), section 35–1–99(3) was a statute of limitations, not an unconstitutional statute of repose, which barred Vigos' claim. *See id.* at 587–88. This Court granted a writ of certiorari.

## II.

¶ 6 Vigos asserts several arguments in support of his position. First, he claims

3–417(2) in 1996, and section 34A–2–417(2) in 1997. The statute was reorganized and altered somewhat in 1999. The relevant substance of section 35–1–99(3) remains unchanged, and we will refer to the 1988 codification, which governs this case.

**2.** This section states:

Except with respect to prosthetic devices, in nonpermanent total disability cases an employ-

ee's medical benefit entitlement ceases if the employee does not incur medical expenses reasonably related to the industrial accident, and submit those expenses to his employer or insurance carrier for payment, for a period of three consecutive years.

Utah Code Ann. § 35–1–98 (1994) (currently found at Utah Code Ann. § 34A–2–417(1) with changes in syntax but not substance).

section 35–1–99(3) violates the Due Process and Open Courts provisions of the Utah Constitution, Article I, sections 7 and 11, and cases following our decision in *Berry v. Beech Aircraft Corp.*, 717 P.2d 670 (Utah 1985). The statute is unconstitutional, Vigos argues, because it cuts off his right to assert a claim before the claim arises. Second, Vigos argues that he met the six-year limitations requirements of section 35–1–99(3) because his initial claim for benefits was deemed filed within the six-year limitations period. Third, Vigos argues that the Commission acquired jurisdiction over his basic claim entitling him to benefits and that the Commission had continuing jurisdiction to adjudicate his claim for permanent total disability benefits even though it was made after the six-year limitations period. Fourth, Vigos contends that because the Commission had jurisdiction over his claim and because the Fund paid him benefits during 1988 and 1989, the Commission had continuing jurisdiction to award him permanent total disability benefits pursuant to section 35–1–78.[3]

¶ 7   We review a Court of Appeals decision on certiorari for correctness, giving its interpretation of law no deference. *See Bear River Mut. Ins. Co. v. Wall*, 978 P.2d 460, 461 (Utah 1999).

¶ 8   It is fundamental that constitutional issues should be avoided if the case can be properly decided on non-constitutional grounds. *See World Peace Movement v. Newspaper Agency Corp.*, 879 P.2d 253, 257 (Utah 1994); *State v. Anderson*, 701 P.2d 1099, 1103 (Utah 1985); *State v. Wood*, 648 P.2d 71, 82 (Utah 1982); *Hoyle v. Monson*, 606 P.2d 240, 242 (Utah 1980). For that reason, we first address whether Vigos satisfied the statute of limitations and whether the Commission had continuing jurisdiction to enter an award for permanent total disability benefits.

¶ 9   Because Vigos was injured in October 1988, the applicable workers' compensation statutory scheme for his claims is Utah Code Ann. title 35, chapter 1, as amended in 1988.

Section 35–1–99 confers jurisdiction on the Commission over particular workers' claims. *See Mannes–Vale, Inc. v. Vale*, 717 P.2d 709, 712 (Utah 1986). Section 35–1–99 requires an injured worker to (1) give notice of an industrial accident to the employer, and (2) make a claim for compensation by filing an "application for hearing" with the Commission. *See* Utah Code Ann. § 35–1–99(1) to (3). *See generally* 7 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 78.10 (1998). Under the first requirement, a worker must notify his employer of an industrial accident within 180 calendar days of the accident or the claim is barred. Notice to the employer is presumed if the employer files an accident report or if the employer or its insurance company pays disability or medical benefits. *See* Utah Code Ann. § 35–1–99(1).

¶ 10   Under the second requirement, an injured worker must make a claim for compensation within six years from an industrial accident.

> A claim for compensation for temporary total disability benefits, temporary partial disability benefits, permanent partial disability benefits, or permanent total disability benefits is wholly barred, unless an application for hearing is filed with the industrial commission within six years after the date of the accident.

*Id.* § 35–1–99(3). If a worker satisfies this limitations period, the Commission acquires jurisdiction, and the Commission will have continuing jurisdiction over the worker's case under section 35–1–78, which states:

> The powers and jurisdiction of the commission over each case shall be continuing. The commission, after notice and hearing, may from time to time modify or change its former findings and orders. Records pertaining to cases that have been closed and inactive for ten years, other than cases of total permanent disability or cases in which a claim has been filed as in Section 35–1–99, may be destroyed at the discretion of the commission.

---

3.  The Utah Citizens' Alliance, a coalition of individuals and organizations dedicated to public safety and accountability, filed an amicus curiae brief and a reply brief supporting Vigos. They essentially make the same arguments: that section 35–1–99(3) is unconstitutional (or that it should not preclude Vigos' action) and that the Commission has continuing jurisdiction.

Utah Code Ann. § 35–1–78; *see also infra* ¶¶ 27–32.

¶ 11 Mountainland and the Fund argue that Vigos did not satisfy the statute of limitations because he failed to file an "Application for Hearing—Form 001," *see* Utah Admin. Code R490–1–2(F) (1988),[4] with respect to his initial 1988 claims before the six-year period ran. The filing of this form, they contend, is essential to satisfying the statute of limitations. The Commission contends that "*any* application for hearing [not just Form 001] is sufficient," but that the worker must actually file some application.

¶ 12 Vigos argues that the Commission acquired initial jurisdiction under section 35–1–99(3) because Mountainland filed a timely "Employer's Report of Injury" with both the Fund and the Commission. Vigos' physician filed a timely "Physician's Initial Report of Work Injury or Occupational Disease" with the Fund and the Commission; and the Fund accepted liability for the accident and actually paid Vigos disability benefits and medical expenses. This was all done well within the six-year limitations period stated in section 35–1–99(3) and in compliance with other time requirements. Vigos argues that filing an "Application for Hearing" is appropriate and necessary only when a dispute arises over entitlement to benefits. Because there was no dispute concerning Vigos' initial entitlement to benefits and benefits were paid, the filing of an "Application for Hearing" was inappropriate and unnecessary. Therefore, Vigos contends the Commission acquired jurisdiction over his initial claim and had continuing jurisdiction of his claim for additional benefits.

¶ 13 The plain language controls the interpretation of a statute, and only if there is ambiguity do we look beyond the plain language to legislative history or policy considerations. *See Olsen v. Samuel McIntyre Inv. Co.*, 956 P.2d 257, 259 (Utah 1998) (citing *Stephens v. Bonneville Travel, Inc.*, 935 P.2d 518, 520 (Utah 1997); *World Peace Movement v. Newspaper Agency Corp.*, 879 P.2d 253, 259 (Utah 1994)). We also "con-

strue[ ] workers' compensation statutes liberally in favor of finding employee coverage." *Olsen*, 956 P.2d at 259 (citing *Heaton v. Second Injury Fund*, 796 P.2d 676, 679 (Utah 1990); *Pinter Constr. Co. v. Frisby*, 678 P.2d 305, 306–07 (Utah 1984)). Accordingly, we look first to the statutory language.

¶ 14 Section 35–1–99(3)[5] states:

A claim for compensation for . . . permanent total disability benefits is wholly barred, unless an application for hearing is filed with the industrial commission within six years after the date of the accident.

Prior to enactment of this provision in 1988, the Act had no statute of limitations for permanent total disability claims. *See Mecham v. Industrial Comm'n*, 692 P.2d 783, 785 (Utah 1984); *Buxton v. Industrial Comm'n*, 587 P.2d 121, 122 (Utah 1978). Section 35–1–99(3) established a six-year limitations period in which an "application for [a] hearing" for permanent total disability benefits, rather than a "claim" for compensation benefits, would have to be filed. *Compare* Utah Code Ann. § 35–1–99(3) (1988), *with* Utah Code Ann. § 35–1–99(1) (Supp.1986) ("If no *claim for compensation* is filed with the Industrial Commission within three years after the date of the accident or the date of the last payment of compensation, the right to compensation is wholly barred." (emphasis added)).

¶ 15 Mountainland and the Fund contend that section 35–1–99(3) requires the filing of the "Application For Hearing—Form 001." The filing of that form is not the only way to establish the Commission's jurisdiction over a claim and to preserve an applicant's right to benefits under section 35–1–99(3). Commission Rule 490–1–2(G) provides for a "Claim for Protection of Rights—Form 002." The filing of this form also apparently satisfies section 35–1–99(3), since its purpose is to preserve an applicant's rights under the Act when a dispute does not exist. *See* Utah Admin. Code R490–1–2(G). Thus, the filing of an "Application for Hearing" is not the

---

4. All citations to the Utah Administrative Code are to the 1987–1988 version, the version applicable to Vigos' claims.

5. Section 35–1–99(3) was enacted in 1988. *See* H.B. 218, 47th Leg., Gen. Sess., 1988 Utah Laws 532, 538–39.

only way to initiate a claim for the purpose of section 35–1–99(3).

¶ 16 The Commission argues that an applicant must actually make *some* application for hearing, but does not specify what applications suffice. Clearly the filing of an "Application for Hearing" or a "Claim for Protection of Rights" form would vest the Commission with jurisdiction over the claim. However, our cases have also made clear that there is no need for a formal claim or application for hearing under section 35–1–99(3) if the Commission's jurisdiction is otherwise established.

¶ 17 In *Utah State Insurance Fund v. Dutson,* 646 P.2d 707 (Utah 1982), an employee suffered a severe burn during employment. She did not file a formal claim for compensation with the Commission; but, as here, the necessary employer, physician, and insurer forms were filed, and the insurer accepted liability and paid compensation benefits and medical costs. Later, the employee required further surgery. The Commission denied a request for medical benefits for the surgery on the ground that because the applicant had not initially made a formal filing, the Commission had no jurisdiction. This Court held that the Commission had jurisdiction:

> Notwithstanding the fact that the [workers' compensation] statutes require either the filing of a claim for compensation or the filing of a written notice of the accident in order to invoke the jurisdiction of the Commission, this Court has long recognized that a claim for compensation need not bear any particular formality. In fact, "great liberality as to form and substance of an application for compensation is to be indulged." However informal the claim may be, it need only give "notice to the parties and to the commission of the material facts on which the right asserted is to depend and against whom claim is made."

*Id.* at 709 (citations omitted). *Dutson* and its predecessors held that the Commission has jurisdiction over a workers' compensation claim on the basis of an informal filing—in Dutson's case, the filing of an employer's "First Report of Injury," a physician's medical report, and an employer's notice of pay-

ment of compensation. *See Dutson,* 646 P.2d at 708–09. The Court further stated:

> [T]he content of the several documents filed with the Commission reveal that all interested parties ... were on *notice* of Dutson's claim and were *duly apprised* of the *material, jurisdictional facts* upon which the claim was based.... We therefore conclude that the form and substance of the documents filed with the Commission were *adequate within the meaning, purpose and intent of the statutes,* ... to confer jurisdiction upon the Commission.

*Id.* at 709 (emphasis added). The principle stated in *Dutson* and its predecessors applies equally here, despite the fact that section 35–1–99(3) refers to the filing of an "Application for Hearing" rather than a "Claim for Compensation." All interested parties had notice of Vigos' initial claim and knew the material and jurisdictional facts surrounding his accident. The required forms were filed, liability accepted, disability benefits paid, and medical expenses compensated well within the six-year period. In effect, both jurisdiction and liability were conceded by all concerned. Thus, the basis for the Commission to assert continuing jurisdiction over the claim for permanent total disability under section 35–1–78 was established. As in *Dutson,* the meaning, purpose, and intent of the Act were met.

¶ 18 Another case, *Utah Apex Mining Co. v. Industrial Commission,* 116 Utah 305, 209 P.2d 571 (1949), also compels this result. In *Apex Mining,* an applicant for workers' compensation benefits did not file a formal claim, but his employer and physician submitted their required forms and the employer presumably accepted liability and requested that the applicant appear before the Commission for examination by its medical committee to determine the extent of its liability. Later, the applicant applied for additional benefits because of continuing health problems stemming from his original accident. This Court held that the Commission had jurisdiction over the applicant's original claims despite the fact that "no formal application for compensation was filed," *id.* at 308, 209 P.2d at 572, and that the Commission therefore had continuing jurisdiction over additional claims. *See id.* at

310, 209 P.2d at 573. In addition, the Court held that the Commission had initial jurisdiction because the "conduct of the [employer and insurer] is equivalent to the filing of a claim." *Id.* at 312, 209 P.2d at 574 (Wolfe, J., concurring). The employer and insurer in *Apex Mining* had filed necessary reports, recognized liability, voluntarily paid disability compensation, and requested a Commission determination on the amount of compensation due. *See id.* at 309, 209 P.2d at 573.

¶ 19   In the instant case, as stated above, Mountainland filed the appropriate reports and Mountainland and the Fund admitted liability, paid medical expenses, and paid temporary disability payments. Their actions, like the employer's and insurer's in *Apex Mining,* were sufficient for the Commission's jurisdiction to attach, notwithstanding the fact that a formal claim for compensation was not initially filed. Their conduct satisfies the section 35–1–99(3) requirement for an "Application for Hearing." *See also Dean Evans Chrysler Plymouth v. Morse,* 692 P.2d 779 (Utah 1984); *cf. Peterson v. Industrial Comm'n,* 29 Utah 2d 446, 511 P.2d 721 (1973) (dismissing claim when neither employer *nor* employee had initially filed documents with Commission).

¶ 20   Further, it was unnecessary under the Commission's own administrative rules for Vigos to file an application for hearing with respect to his initial claim. Utah Administrative Code R490–1–3(B) states:

> Whenever a claim for compensation benefits is denied by an employer or insurance carrier, the burden rests on the applicant to initiate the action by filing an Application for Hearing with the Commission.

Thus, only *after* a claim for compensation has been made and denied must a worker file the "Application for Hearing" under this rule. It cannot be the case that section 35–1–99(3) is satisfied only upon filing an "Application for Hearing" if the "Application" is not required to be filed under the Commission's rules until after a claim has been denied. The rule is therefore flatly inconsistent with Mountainland's and the Fund's contention—and with the dissenting opinions of Chief Justice Howe and Justice Zimmerman—that filing an "Application for Hearing" is the only way to comply with the statute of limitations and vest the Commission with jurisdiction.[6]

¶ 21   It would be inconsistent with the Act's purpose and the manner in which it is to be construed to hold that Vigos' claim is barred because he did not initiate a formal Commission hearing. Mountainland and the Fund admitted liability for Vigos' industrial accident. Because there was no dispute over compensation or medical benefits, no Commission hearing was requested or necessary. Doctors released Vigos to work, and he attempted to rehabilitate himself through further employment. The full extent of his

---

**6.** The Commission's *Employee's Guide to Workers' Compensation* also contradicts respondents' position. This document, an informal and readable guide for persons having workers' compensation questions, is made available through one's employer and on the Internet. See *Employee's Guide to Workers' Compensation,* available on the Internet at www.labor.state.ut.us/workcomp.htm. We note in passing that it is much more likely that an injured worker will consult this readable guide to understand his responsibilities under the Workers' Compensation Act than the statutes in the Utah Code or the Administrative Rules, and thus it is useful in our analysis.

The *Guide* responds to the question "HOW DO I FILE A CLAIM FOR A WORK RELATED INJURY OR ILLNESS?" by stating: "*Report* the accident to your employer immediately, no matter how slight. However, A WORKER HAS UP TO 180 DAYS TO *REPORT* AN INJURY OR WORK RELATED ILLNESS." *Id.* (emphasis added). The Commission mentions *reporting* an injury to the employer as the required action to

make a claim, not filing an "Application for Hearing" with the Commission. *See also id.* at Question Eight (mentioning assisting in filing Employer's First Report Of Injury and Physician's Initial Report of Injury, but not "Application for Hearing").

The *Guide* mentions nothing about an "Application for Hearing" until a question regarding what to do if a claim is *denied:*

A. First talk with the insurance carrier or self-insured employer to find out why your claim has been denied. If they lack information required to accept a claim, you can obtain the missing information and resubmit the claim. If this is unsuccessful, call the Industrial Accidents Division of the Labor Commission at 530–6800 or toll free (800)530–5090. The staff may be able to assist you with your claim or *possibly file an application for a hearing.* *Id.* (emphasis added). Obviously, the Commission's argument is significantly undermined by its own *Employee's Guide.*

injuries became apparent only after several years. The public policy of this state requires that when persons having claims attempt to use lesser means than pursuit of formal administrative adjudication or litigation, they may not be penalized by loss of benefits at some later date. *Cf. Stoker v. Workers' Comp. Fund,* 889 P.2d 409, 412 (1994) (stating it would be ironic to interpret the Act as requiring a claimant to use the most aggressive and expansive form of therapy, rather than a less aggressive and invasive therapy, to claim additional benefits). To hold otherwise would result in workers bringing formal administrative proceedings for almost every accident, regardless of disputed liability, to insure that any future related problems would be covered. Vigos' claim of permanent total disability should not now be barred because Mountainland and the Fund admitted liability and made the filing of an application for hearing unnecessary at the time of Vigos' 1988 accident. Because they admitted liability and paid compensation and medical benefits, it was unnecessary for Vigos to file an initial application for hearing. Indeed, in these circumstances, it would have been entirely meaningless for Vigos to file an application for hearing under section 35–1–99(3).

¶ 22 Holding section 35–1–99(3) satisfied in this case is consistent with the general policies behind statutes of limitations. Statutes of limitations are intended to prevent unfair dilatory litigation against a defendant and to require that claims be litigated while proper investigation and preservation of evidence can occur. Examples of unfair litigation include surprise or ambush claims, fictitious and fraudulent claims, and stale claims. *See Horton v. Goldminer's Daughter,* 785 P.2d 1087, 1091 (Utah 1989); *Myers v. McDonald,* 635 P.2d 84, 86 (Utah 1981); *Kennecott Copper Corp. v. Industrial Comm'n,* 597 P.2d 875, 876 (Utah 1979); *Mason v. Mason,* 597 P.2d 1322, 1323 (Utah 1979). Evidentiary problems include lost evidence, faded memories, and disappearing witnesses. *See Myers,* 635 P.2d at 86. Vigos was not attempting to ambush his employer or the Fund with a stale or fraudulent claim. Rather, after receiving initial benefits for his industrial accident and attempting to rehabil-

itate himself by engaging in further employment, it became apparent that his industrial injuries were far more severe than a mere temporary disability. He should not now be punished for his diligence in seeking to rehabilitate himself by being barred from claiming permanent total disability. *See Stoker,* 889 P.2d at 412.

¶ 23 Further, there is no problem with stale evidence in this matter. The benefits which Vigos now seeks relate to his initial injury, which Mountainland and the Fund investigated and documented in depth. The record includes medical diagnosis and insurance papers outlining his initial injuries.

¶ 24 Finally, in holding that the parties' actions satisfy section 35–1–99(3) requirements, we uphold the purpose and intent of the Workers' Compensation Act generally and its jurisdictional section specifically. The purpose of the Act is to provide relief from industrial accidents. *See Pinter,* 678 P.2d at 306–07. To that end, we construe the Act liberally and in favor of coverage if the statutes reasonably permit. *See Heaton,* 796 P.2d at 679. Prior cases (specifically *Dutson* and *Apex Mining* ) have found jurisdiction in the Commission based on very similar fact patterns. The Commission has been held to have jurisdiction when all the appropriate parties were aware of the "material, jurisdictional facts upon which the [workers' compensation] claim was based," *Dutson,* 646 P.2d at 709, and the "purpose and intent of the [workers' compensation jurisdictional] statutes" were fulfilled. *See id.; see also* 100 C.J.S. *Workmen's Compensation* § 483(b) (1958) ("An acknowledgment or recognition of liability for compensation by the employer constitutes a waiver of the requirement for making or filing a timely claim."); *id.* § 483(c) ("Payment of compensation for a period of time may constitute a waiver of the requirement of timely making or filing of a claim for compensation or estop the employer or its insurance carrier to object to the failure to make or file such claim unless the requirement is not subject to waiver or estoppel.").

¶ 25 In sum, Vigos satisfied the statute of limitations in section 35–1–99(3) by showing

that required forms were filed, disability benefits paid, and medical expenses compensated before the six-year period ended.

¶ 26  Because Vigos satisfied the statute of limitations in section 35–1–99(3), the Commission had original jurisdiction.  It follows that the Commission had continuing jurisdiction under section 35–1–78 to hear Vigos' 1995 application for permanent disability arising from his 1988 accident.  Section 35–1–78 states in part:

(1) The powers and jurisdiction of the commission over each case shall be continuing.  The commission, after notice and hearing, may from time to time modify or change its former findings and orders.  Records pertaining to cases that have been closed and inactive for ten years, other than cases of total permanent disability or cases in which a claim has been filed as in Section 35–1–99, may be destroyed at the discretion of the commission.

. . . .

(3)(a) This section may not be interpreted as modifying in any respect the statutes of limitation contained in other sections of this chapter. . . .

(b) The commission has no power to change the statutes of limitation referred to in Subsection (a) in any respect.

¶ 27  Subsection (1) provides that the Commission's powers and jurisdiction "shall be" continuing over "each case" properly within its jurisdiction.  Section 35–1–78 imposes no time limit on the Commission's continuing jurisdiction.  Indeed, *Larson's Workers' Compensation Law*, the authoritative treatise on workers' compensation, notes that Utah is in "an important minority of states [that] permit reopening for changed condition *at any time*."  *Larson's*, § 81.21 (emphasis added).  That policy benefits both employers and employees.  Disability benefits may be decreased in favor of an employer or increased to benefit an injured worker when circumstances warrant.  *See id.* § 81.10.  It would be unfairly discriminatory to allow a reduction of benefits under the continuing jurisdiction statute but not allow an increase in benefits to employees after the specified period has run.  That, however, seems to be the position of Chief Justice Howe's dissent.  Since Vigos satisfied the statute of limitations in section 35–1–99(3), the Commission had continuing jurisdiction pursuant to section 35–1–48 over his request for additional benefits.

¶ 28  Chief Justice Howe's dissent states that the Legislature, through section 35–1–78(3), intended to "limit[ ] the continuing jurisdiction of the Commission to the periods contained in the statute of limitations in 35–1–99(3)."  *Infra* at ¶ 50.  The dissent offers no citation of any kind for its assertion of what the Legislature intended.  The assertion is merely lifted from the joint brief of Mountainland and the Fund that states no authority for the proposition.  Moreover, common sense and the plain language of subsection (3) refute the dissent's reading of the continuing jurisdiction provision.  If read as the dissent reads that provision, continuing jurisdiction would be a complete nullity.  Chief Justice Howe argues that the continuing jurisdiction provision applies only to claims that fall within the limitations period.  But the Commission needs no continuing jurisdiction to act in those cases.  In effect, Chief Justice Howe makes the continuing jurisdiction statute a nullity.

¶ 29  As to plain meaning, subsection (3) states two propositions: first, that section 35–1–78 cannot be interpreted as modifying workers' compensation statutes of limitations, and second, that the Commission cannot change the workers' compensation statutes of limitations.  A statute of limitations has been defined as "an act limiting the time within which an action shall be *brought*."  54 C.J.S. *Limitations of Actions* § 2 (1987) (emphasis added).  Section 35–1–78(3), on its face, does not "modify," and the Commission cannot "change," the time within which a workers' compensation claim must originally be *brought*.  However, if a worker brings a claim within the six-year period in section 35–1–99(3), the Commission may have continuing jurisdiction beyond the six years to decide related claims.  But that does not modify or change the limitations period, which pertains only to a claim for some rem-

edy for an injury from an accident.[7] In other words, section 35–1–78(3) applies when a worker has done nothing to satisfy the statute of limitations before it runs; in that case, section 35–1–78(3) insures that the Commission's continuing jurisdiction is not used to create original jurisdiction after the relevant limitations period has run. Nevertheless, subsection 35–1–78(1) gives the Commission continuing jurisdiction, even after the limitations period has run, if jurisdiction over the claim was established before the statute ran.

¶ 30   *United States Smelting, Refining & Mining Co. v. Nielsen,* 19 Utah 2d 239, 430 P.2d 162 (1967) (*Nielsen I* ), aff'd on reh'g on *other grounds,* 20 Utah 2d 271, 437 P.2d 199 (1968) (*Nielsen II* ), does not support the position of the dissents. *Nielsen I* denied a worker's claims for compensation because the claims were brought after he made a lump sum settlement of previous claims with his self-insured employer. *See Nielsen I,* 19 Utah 2d at 240–42, 430 P.2d at 164. The Court stated that the continuing jurisdiction statute then in effect "mean[s] the commission has continuing jurisdiction only during the period of the [relevant] limitations statutes." *Id.* at 242, 430 P.2d at 164. While *Nielsen I* may state the proposition that the Commission's continuing jurisdiction does not extend beyond the statute of limitations period, that case is inapplicable to Vigos' case for three reasons. First, the real reason *Nielsen I* barred the worker's claims, according to *Nielsen II,* is that he made a lump sum settlement with his employer "in lieu of any . . . [further] compensation to which he would be entitled, thus exhausting his claim[s]," not because of any limitations on continuing jurisdiction under the statute. *See id.* at 272, 437 P.2d at 200. Second, *Nielsen II* stated on rehearing that the effect of *Nielsen I* "is confined to its own facts," including the fact that the parties had settled all future claims, "which ought to be regarded as of controlling

importance." *Id.* In this case, there is no evidence that Vigos, Mountainland, and the Fund entered into a settlement precluding Vigos' future claims. Third, although *Nielsen I* stated that "the commission has continuing jurisdiction only during the period of the [relevant] limitations statutes," that statute was critically different from the current continuing jurisdiction statute, making *Nielsen I* 's statement on continuing jurisdiction inapplicable to the current continuing jurisdiction statute. The statute upon which *Nielsen I* relied stated that "the employee shall receive [partial disability benefits], during such disability, *and for a period of not to exceed six years* from the date of the injury." Utah Code Ann. § 42–1–62 (1943) (emphasis added). The current continuing jurisdiction statute reads: "The powers and jurisdiction of the commission over each case shall be continuing." Utah Code Ann. § 35–1–78(1). Chief Justice Howe's reliance in his dissent on *Nielsen I* is misplaced.[8]

¶ 31   Because Vigos satisfied the statute of limitations in section 35–1–99(3), the "powers and jurisdiction of the commission over [his] case [are] continuing," as the language of section 35–1–78 plainly states. *See Apex Mining,* 116 Utah at 310–12, 209 P.2d at 573–74; *Sheppick v. Albertson's, Inc.,* 922 P.2d 769, 775 & n. 2 (Utah 1996); *Stoker,* 889 P.2d at 412; *Barber Asphalt Corp. v. Industrial Comm'n,* 103 Utah 371, 135 P.2d 266, 270 (1943).

¶ 32   In sum, the Court of Appeals erred in holding that the Commission did not have continuing jurisdiction to hear Vigos' application for permanent total disability. We reverse and remand for proceedings consistent with this decision.

¶ 33   Reversed and remanded.

¶ 34   Associate Chief Justice DURHAM concurs in Justice STEWART'S opinion.

---

**7.** Of course, one is not required to separately satisfy the statute of limitations for related claims. As this Court stated in *Aetna Life Insurance Co. v. Industrial Commission:*

A claim for compensation under the Industrial Act is only *one claim,* no matter how many hearings are had or how many distinct awards are made. It is a claim by the employee for compensation *for the injury he has sustained,* notwithstanding the compensation may be de-

termined from time to time resulting in many distinct awards.

73 Utah 366, 376–77, 274 P. 139, 143 (1929) (emphasis added).

**8.** Both Chief Justice Howe and Justice Zimmerman rely on the *supposed* intent of the Legislature in enacting the 1988 amendment to section 35–1–99, but neither justice cites one word of legislative history in support if his opinion.

RUSSON, Justice, concurring in the result:

¶ 35   I agree with Justice Stewart that Vigos' claim for permanent total disability benefits is not barred by the statute of limitations contained in former Utah Code Ann. § 35–1–99(3).   However, I do not agree that Vigos' initial claims for disability benefits can be interpreted as satisfying the express statutory mandate that disability claimants must file an application for a hearing.   Instead, I believe Mountainland and the Workers' Compensation Fund are estopped from invoking the statute because they have already granted disability benefits to Vigos without demanding compliance with the application requirement.   Moreover, the Industrial Commission cannot arbitrarily and discriminatorily accord continuing jurisdiction to those persons who by happenstance have been compelled to file an application for a hearing, while at the same time denying continuing jurisdiction to similarly situated persons who have not had occasion to file such an application.

¶ 36   To begin, I believe both Justice Stewart's lead opinion and Chief Justice Howe's dissent miss the most important point in former section 35–1–99(3) of the Utah Code (now codified at section 34A–2–417 [1]), which stated:

> A claim for compensation for temporary total disability benefits, temporary partial disability benefits, permanent partial disability benefits, or permanent total disability benefits is wholly barred, *unless an application for hearing is filed with the Industrial Commission* within six years after the date of the accident.

This provision does not merely prescribe a statute of limitations.   Under its plain language, the filing of an application for hearing is a statutory prerequisite to the receipt of any disability benefits whatsoever.   Though it prohibits new and original claims beyond six years, it does not relieve claimants of the

burden of filing an application if they wish to receive disability benefits *within the first six years* after an accident.   Consequently, the ultimate effect of the plain language of this provision is to create a condition precedent to the receipt of disability benefits at *any time* prior to six years from the accident (but which may not be exercised for the first time beyond six years).

¶ 37   It is clear from the record, however, that the Fund has not required compliance with this requirement.   Indeed, all the parties have acknowledged that the "application for hearing" requirement within the first six years after an accident is functionally meaningless unless a claim is challenged.   As a consequence, it appears no claimant is ever required to file an application for a hearing within that period unless the claims are contested.[2]   In this case, the Fund granted temporary total disability benefits from October 14, 1988, through July of 1989.   At that time, the Fund did not request, instruct, or in any way require Vigos to file any document that it or the Commission acknowledges as an "application for hearing," yet the Fund now argues that Vigos cannot modify his disability status without timely filing such a document.

¶ 38   If, prior to paying out disability benefits, the Fund had required Vigos to file the application in conformance with the statute, then—as the Commission concedes—Vigos would have been able to pursue his request for a modification of his benefits under the continuing jurisdiction of the Commission. The Fund's failure to demand compliance with the statute was thus clearly prejudicial to Vigos' subsequent rights.   I submit that where the Fund paid out disability benefits in 1988 (well within the six-year period) and in so doing failed to require Vigos' compliance with the "application for hearing" requirement, it is equitably estopped from belatedly attempting to enforce that which it

---

1.   The statute has been significantly reorganized and rewritten, but still relies upon the irrational prerequisite of filing "an application for hearing."   *See* Utah Code Ann. § 34A–2–417(2)(a)(i) (Supp.1999).

2.   Indeed, as Justice Stewart's opinion points out, the Commission's *Employee's Guide to Workers' Compensation* does not instruct injured employees to file an application for a hearing as part of any claim for disability benefits.   *See supra* note 6, op. of Stewart, J.

previously ignored.[3] *See State Dep't of Human Servs. v. Irizarry*, 945 P.2d 676, 680 (Utah 1997) (setting forth elements of estoppel); 28 Am.Jur.2d *Estoppel and Waiver* § 27 (1966).

¶ 39 Nor can the Commission deny its continuing jurisdiction to Vigos. The Commission concedes it will accept more than one form for the purpose of preserving continuing jurisdiction, and it specifically designates the "Application for Hearing—Form 001" and the "Claim for Protection of Rights—Form 002" as examples. Hence, the Commission impliedly contends that the legislature delegated to it the authority and discretion to dictate what satisfies the "application for hearing" requirement, even if the forms designated for that purpose do not actually constitute a genuine request that a hearing be held.[4] Notwithstanding this contention, the Commission's current policy effectively discriminates between claimants whose claims have been contested and those whose claims have not been contested. Claimants who have been denied disability benefits *must* file an application for hearing if they wish to pursue their claims, but those (such as Vigos) whose claims have been accepted and paid without contest have had no legitimate opportunity to preserve their rights.

¶ 40 The Commission's practice defies the policy purposes of the workers' compensation scheme. Because the scheme is an insurance system designed to avoid the costs and difficulties inherent in the common law tort system it supplanted, injured employees need not undertake the burdensome and expensive task of proving the cause of their injuries. *See, e.g., Stoker v. Workers' Compensation Fund*, 889 P.2d 409, 411 (Utah 1994). Hence, they are encouraged not to invest in expensive legal counsel, and they have every incentive to rely on the advice and instructions provided by their employer, their employer's insurer, and the Commission. If the scheme functions as it should, all these parties work together to provide the benefits to which an injured employee is legitimately entitled, and none of the parties seek to manipulate the system or avoid obligations.

¶ 41 In this case, the system initially functioned as intended. After Vigos was injured, he properly observed all statutory and administrative rules of which he was notified and attempted to rehabilitate himself. If the Fund had unjustifiably challenged his claims, then Vigos would have been compelled to file an application for a hearing; but where the Fund cooperated and agreed that Vigos was entitled to receive disability benefits, he had no reason, indeed, no justification, for filing such an application.

¶ 42 The Commission's practice thus negates the entire purpose of the workers' compensation scheme and effectively requires all injured workers to obtain legal counsel to preserve their rights. If the requirement at issue served a reasonable purpose, then the

---

3. Justice Zimmerman argues that the Fund is not subject to estoppel because it is "a government agency acting in a governmental capacity." This statement is simply incorrect. Regardless of the Fund's status as a legislatively established "quasi-public" entity, it manifestly is not acting in a governmental capacity. Utah Code Ann. § 35–1–46(1) (now codified at section 34A–2–201(1) (1997)) permitted employers to select any one of three insurance options: (1) they may insure themselves with the Fund; (2) they may obtain insurance from a private insurer authorized by the state; or (3) they may self-insure if they can demonstrate the financial ability to do so. Thus, the Fund functions in the same manner and capacity as a private insurer and cannot claim any special governmental status to avoid equitable estoppel.

4. Arguably, the legislature did not intend to delegate authority to the Commission to determine what constitutes an "application for hearing." If so, the Commission may not accept, for purposes of the statute, any form that does not actually constitute a genuine request for an adjudicative hearing. Such an interpretation of the statute, however, would be constitutionally invalid. Claimants whose claims have not been contested would not be allowed by the statute to meet its express requirements because they could not be required to submit (and the Commission could not accept) an application for a pointless adjudicative hearing. The statute would thus create two classes of claimants: those who had been compelled to file an application for hearing and those who had been prevented from filing an application. The former class would benefit from continuing jurisdiction beyond six years, and the latter would not. Since there is no rational basis for drawing such a distinction, this interpretation of the statute would violate Vigos' rights to due process and equal protection. *See State v. Herrera*, 895 P.2d 359, 368 (Utah 1995).

Commission should be obligated to notify all claimants from the outset and enforce the requirement uniformly; but where the procedural requirement of filing an application for hearing serves no rational purpose, the Commission's position on this issue is indefensible. Indeed, its practice of granting continuing jurisdiction to the "fortunate" few who have suffered a previous denial of disability benefits while denying it to all those who have dutifully complied with the purposes of the workers' compensation scheme (but who have merely failed to research and discover the purpose and existence of the "Claim for Protection of Rights") is arbitrary and capricious. *See Milne Truck Lines v. Public Serv. Comm'n,* 720 P.2d 1373, 1378 (Utah 1986).

¶ 43   In conclusion, I believe Mountainland and the Fund are estopped from demanding compliance with the statutory requirement that Vigos file an application for hearing; and I believe neither the Commission nor the legislature may enforce that requirement in an irrationally discriminatory or arbitrary manner. I thus concur with the result reached by Justice Stewart's lead opinion.

HOWE, Chief Justice, dissenting:

¶ 44   I agree with the lead opinion that *Vigos* initially invoked the jurisdiction of the Commission when his employer and his physician notified the Commission of Vigos's accident. However, I disagree with the lead opinion that the Commission thereafter had continuing jurisdiction without any time limit and without Vigos taking any other action. The lead opinion overlooks the six-year statute of limitations contained in section 35–1–99(3), which expressly terminates the continuing jurisdiction of the Commission provided for in section 35–1–78 unless the employee files an application for a hearing on his claim for permanent total disability benefits within six years.

¶ 45   In chapter 116, Laws of Utah 1988, the legislature made extensive amendments to the Workers' Compensation Act. Section 35–1–99(1) was amended to provide:

> If any employee claiming to have suffered an industrial accident in the service of his employer fails to give written notice within 120 calendar days to his employer or the Commission of the time and place where the accident and injury occurred, and of the nature of the accident and injury, the employee's claim for benefits under this chapter is wholly barred.... Receipt of written notice is presumed if the employer complies with the terms of section 35–1–97 by filing with the Commission an accident report, or if the employer or its insurance carrier pays disability or medical benefits to or on behalf of the injured employee.

The lead opinion correctly concludes that Vigos complied with that requirement.

¶ 46   A new subsection (2) was added which was the subject of the dispute in *Brown & Root Industrial Service v. Industrial Commission,* 947 P.2d 671 (Utah 1997). Subsection (2) provides that in nonpermanent total disability cases, an employee's medical benefit entitlement, which up until the time of that amendment had no time limit, ceased if the employee did not incur and submit for payment any expense for a period of three consecutive years. We observed that this amendment was apparently in response to our decision in *Kennecott Copper Corp. v. Industrial Commission,* 597 P.2d 875 (Utah 1979), where we held that an employee's entitlement to medical expenses continued without any time limit. Subsection (2) is not involved in the instant case.

¶ 47   The 1988 amendments also added subsection (3), which is before us in the instant case. It provides that a claim for compensation for permanent total disability benefits is wholly barred unless an application for hearing is filed with the Commission within six years after the date of the accident. This requirement is in addition to the requirement in subsection (1) to give notice of the accident. Both subsection (2) and subsection (3) appear to be part of an attempt by the legislature to place some limit on the continuing exposure of liability on the part of the employer and its insurer.

¶ 48   To make its intent amply clear, the legislature amended section 35–1–78 to limit the continuing jurisdiction of the Commission to modify or change its former findings and

orders. So far as is pertinent here, that section was amended to read as follows:

(1) The powers and jurisdiction of the Commission over each case shall be continuing. The Commission, after notice and hearing, may, from time to time modify or change its former findings and orders. . . .

(2). . . .

(3)(a) This section may not be interpreted as modifying in any respect the statutes of limitations contained in other sections of this chapter or chapter 2, title 35, the Utah Occupational Disease Disability Compensation Act.

(b) The Commission has no power to change the statutes of limitation referred to in subsection (2) in any respect.

¶ 49    It is clear to me that the legislature intended to establish a six-year limit on the filing of an application for a hearing for permanent total disability benefits. The legislature did that in response to *Mecham v. Industrial Commission,* 692 P.2d, 783, 785 (Utah 1984), in which we held that there was no time limitation for filing a claim for permanent total disability benefits, providing the employer had been given timely notice of the accident and the jurisdiction of the Commission initially invoked. The lead opinion erroneously relies on *Utah State Insurance Fund v. Dutson,* 646 P.2d 707 (Utah 1982); *Utah Apex Mining Co. v. Industrial Commission,* 116 Utah 305, 209 P.2d 571 (1949), and other pre–1988 cases as still being controlling law. They are not. The lead opinion makes the 1988 amendment a useless act.

¶ 50    The lead opinion has overlooked and has failed to apply the statute of limitations contained in subsection (3). It has also ignored the 1988 amendment to section 35–1–78 which limits the continuing jurisdiction of the Commission to the periods contained in the statute of limitations in 35–1–99(3). This court in *United States Smelting, Refining & Mining Co. v. Nielsen,* 19 Utah 2d 239, 430 P.2d 162 (1967), held that the continuing jurisdiction of the Commission provided for in section 35–1–78 did not extend beyond the limitations imposed by the statute of limitations in the Workers' Compensation Act. That case is controlling here.

¶ 51    In summary, Vigos properly invoked the jurisdiction of the Commission when his accident report was filed by his employer and physician. However, that is not dispositive here as the lead opinion assumes. By virtue of section 35–1–9(3), he was required to do more. If he wanted to obtain total permanent disability benefits, he was required to file an application for a hearing within six years following his accident. He did not do that. Like many cases where a statute of limitations prevents recovery, a harsh result sometimes follows. But, the legislature in its wisdom has balanced the rights of employees against the continuing obligation of employers and their insurers to provide compensation for injured workers and has decided that permanent total disability benefits are not available unless applied for within six years.

¶ 52    The administrative law judge, the Industrial Commission, and the court of appeals correctly applied the 1988 amendments to this case. I would affirm them.

ZIMMERMAN, Justice, dissenting:

¶ 53    I dissent from the result and reasoning of the lead opinion. I am sympathetic with the result, but cannot find a legitimate way to interpret the statute to reach it. I also cannot join in the separate opinion of Justice Russon. Although he deals more directly with the operation of the statute, and points out the true character of the statute and how it operates, I am not prepared to hold Mr. Vigos entitled to the protection of our estoppel case law. Therefore, I would affirm the court of appeals.

¶ 54    I first address the lead opinion's interpretation of the statute. In 1988, the legislature passed section 35–1–99(3), which provided that "a claim for compensation for temporary total disability benefits, temporary partial disability benefits, permanent partial disability benefits, or permanent total disability benefits is wholly barred, unless an application for hearing is filed with the industrial commission within six years after the date of the accident." As Justice Russon points out, this provision requires that any claim for benefits be denied unless "an application for hearing" is filed within six years of the accident. Prior to the passage of this

provision, section 35–1–99(1) required only the filing of a "claim for compensation," and that could be filed the later of three years after the accident, or three years after the last payment of some compensation relating to the accident. Our cases had been liberal in finding this requirement to be met, holding that no particular formality was required for something to constitute a filed "claim." *See, e.g., Utah State Ins. Fund v. Dutson,* 646 P.2d 707, 709 (Utah 1982). Plainly, the 1988 legislature passed the requirement that an "application for hearing" be filed to preserve a right to compensation in an attempt to tighten the earlier statute, to reject our cases, and to set a firm cut off for those seeking compensation by requiring a clear action asserting their claim by the end of the sixth year after the accident. As Justice Russon notes, because the commission, employer, and insurers have not been uniformly requiring the injured person to file an "application for hearing" before paying compensation, in operation the 1988 statute can act as a statute of repose in a broader range of settings than might have been anticipated. For example, where, as here, the injured worker accepts compensation payments and does not file an application, after the six years have run, the commission can reject any request for a new form of compensation by citing the failure to file an application for hearing.

¶ 55 Against this background, the lead opinion purports to set out to determine whether the language of the statute really requires the filing of an application for hearing as a precondition to preserving a claim. The lead opinion pays lip service to the rule that we first look to the language of a statute in finding its meaning, but then it promptly ignores it. Although the statute seems clear on this point, the lead opinion finds the statute unclear and then reads the requirement out of the statute, returning things to the pre–1988 state of affairs and saving Mr. Vigos from his failure to file an application for hearing. The only justification Justice Stewart offers for ignoring the text of the statute is the bald assertion that "[t]he filing of [an application] is not the only way to ... preserve an applicant's rights to benefits," and the further assertion that under our prior case law, there is "no need for a formal claim, or application for hearing." ¶¶ 15 & 16. We may not like what the legislature did, and we may not like the way that the agency, the employers, and the insurers are failing to follow the statute, but the legislature certainly has the power to reject our case law and to condition the vesting of a right to compensation upon the filing of an application for hearing. It did so, and I would apply the plain language of the statute. I might encourage the legislature to correct the obvious problem that the requirement of an application for a hearing has created for persons who have been paid compensation without having to file a formal application for hearing and whose injuries become aggravated after the six-year period runs, something that the legislature may not have foreseen. But I do not claim the power to tell them that they must do so, at least not through a creative "interpretation" of this statute that effectively repeals it.

¶ 56 As an alternative to finding that the statute permits him to recover, Mr. Vigos asks us to hold the 1988 statute to violate the Utah Constitution, article I, section 11, as construed in our *Berry* line of cases. *See generally Berry v. Beech Aircraft Corp.,* 717 P.2d 670 (Utah 1985). Interestingly, neither the lead opinion nor Justice Russon nor Chief Justice Howe in dissent addresses this claim, although at first glance, *Berry* and its progeny would seem well-suited to address any statute that seems to operate as a statute of repose. *See Sun Valley Water Beds of Utah, Inc. v. Herm Hughes & Son, Inc.,* 782 P.2d 188 (Utah 1989); *Horton v. Goldminer's Daughter,* 785 P.2d 1087 (Utah 1989). My colleagues' silence may be explained by the fact that to use *Berry* against a statute that itself provides a remedy that the common law did not is to break new ground and raise doctrinal questions about the reach of the *Berry* line of cases that may be hard for even them to answer. *See generally Craftsman Builder's Supply, Inc. v. Butler Mfg. Co.,* 974 P.2d 1194, 1224 (Utah 1999) (Zimmerman, J., concurring in the result).

¶ 57 I would decline to address the merits of Mr. Vigos' article I, section 11 claim for a separate reason: he has entirely failed to

brief the issue. His brief quotes the constitution and refers cryptically to *Berry*, but it contains no reasoned discussion of that case, its progeny, or the analytical scheme that they have created. This sort of inadequate briefing routinely leads us to decline to address constitutional questions. *See, e.g., Springville Citizens for a Better Community v. City of Springville*, 979 P.2d 332, 336 n. 2 (Utah 1999); *see also State v. Jaeger*, 973 P.2d 404, 410 (Utah 1999); *State v. Holland*, 777 P.2d 1019, 1022 n. 1 (Utah 1989).[1]

¶ 58 Justice Russon's non-constitutional estoppel discussion is the one argument advanced on behalf of Mr. Vigos' position that strikes me as actually addressing how the language of the 1988 statute has interacted with the commission's maladministration of that same statute to the prejudice of Mr. Vigos. Justice Russon properly notes that despite the statute's plain requirement, the commission, the employers, and their insurers are regularly paying compensation in the absence of an application for hearing. The consequence of these payments has been to obscure for claimants such as Mr. Vigos the statute's requirement of an "application for hearing." Here, it is that failure that his heretofore-benefactors have pounced upon to deny his new claim. At first blush, this seems a situation that cries out for the application of the doctrine of estoppel. Indeed, Justice Russon flatly states that as a matter of law the doctrine of estoppel precludes the assertion of the "application for hearing" requirement to Mr. Vigos' detriment, and he would so hold. However, he engages in no analysis, simply citing *State Department of Human Services v. Irizarry*, 945 P.2d 676, 680 (Utah 1997), as setting out the relevant estoppel elements.

¶ 59 The difficulties with this position are several. First, Mr. Vigos has never raised estoppel in any of his briefs, and we do not address issues that are not briefed. *See*

*Holland* 777 P.2d at 1023 n. 1. Second, there has been no factual determination as to whether the elements of estoppel have actually been met by Mr. Vigos. We are not in a position to make those factual findings, especially when we are aware from the record that he did know of his changed situation before the six year period ran.[2]

¶ 60 Third, and perhaps most critically, the estoppel law cited in *Irizarry* is not the only pertinent law for this case. Here, the party against which an estoppel is being asserted is a state agency. The general rule is that a government agency acting in a governmental capacity cannot be estopped. *See Utah State Univ. of Agric. & Applied Science v. Sutro & Co.*, 646 P.2d 715, 718 (Utah 1982). There are exceptions to this rule, as we explained in *Sutro* and its progeny. *See id.; Anderson v. Public Service Comm'n*, 839 P.2d 822, 827 (Utah 1992). But to decide whether those exceptions apply, a court must have detailed information about whether the application of the general rule " 'would result in injustice, and there would be no substantial adverse effect on public policy.' " *Plateau Mining Co. v. Utah Div. of State Lands & Forestry*, 802 P.2d 720, 728 (Utah 1990) (quoting *Sutro*, 646 P.2d at 718). Here, we know that Mr. Vigos would be denied the compensation he seeks if the state is not estopped. But we do not know with any certainty what the adverse effect on public policy would be if we were to hold that anyone who has been paid benefits without filing an application for hearing was freed from the six-year statute. I assume that the only adverse effect would be that many persons who the legislature did not intend to be able to recover from the Fund would now be free to do so. But to know whether that result would have a financial or other consequence so great as to warrant our not estopping the state would require that we have further briefing, at a minimum. The most

---

1. Even if we reached the merits of the constitutional issue Mr. Vigos attempts to raise and applied the ever-changing *Berry* analysis, he would lose. The statute in question did not operate as a statute of repose for Mr. Vigos and cannot legitimately be analyzed as such. Mr. Vigos knew of his changed disability status for somewhere between nine and twenty-one months *before* the six-year period ran. Therefore, on these facts, there

is no occasion to view him any differently than someone who fails to file on a claim that has become known before the statute of limitations has run. *See Brigham Young Univ. v. Paulsen Constr. Co.*, 744 P.2d 1370, 1374 (Utah 1987).

2. *See note 1, supra.*

this court could do under these circumstances would be to order such further briefing *sua sponte*, a step that still would be a reach when the issue has never before been raised, much less briefed. But we certainly cannot legitimately proceed to the estoppel holding that Justice Russon suggests on this record.[3]

¶ 61 For the foregoing reasons, I would affirm the court of appeals.

---

**3.** Justice Russon states that this analysis is necessary because the agency is not functioning as a governmental entity. He cites no authority for this proposition; I can find none, and it is certainly not self-evident.