2002 UT App 164

**INTERMOUNTAIN SLURRY SEAL and/or CNA Insurance, Petitioner,**

v.

**LABOR COMMISSION and Kyle Stephens, Respondents.**

No. 20010271–CA.

Court of Appeals of Utah.

May 16, 2002.

Robert C. Olsen and Theodore E. Kanell, Plant Wallace Christensen & Kanell, Salt Lake City, for Petitioner.

Daniel F. Bertch, Kevin K. Robson, Bertch Robson, Alan Hennebold, Labor Commission, Salt Lake City, and Jan P. Malmberg, Paul J. Whelan, Perry Malmberg & Perry, Logan, for Respondents.

Before JACKSON, P.J., and. GREENWOOD, and THORNE, JJ.

## OPINION

THORNE, Judge:

¶ 1 Intermountain Slurry Seal and CNA Insurance (Employer) appeal from an order of the Labor Commission (the Commission) concluding that injuries qualifying for workers' compensation benefits under Utah Code Ann. § 34A–2–413(10) (2001)[1] are not subject to the suspension of benefits provision found in section 34A–2–413(7).[2] We affirm.

## BACKGROUND

¶ 2 On September 8, 1999, while working for Intermountain Slurry Seal, Kyle Stephens was involved in an accident with a heavy equipment roller that crushed both of his legs below the knee, resulting in a double amputation. After the accident, Employer voluntarily paid disability benefits to Stephens. Employer also volunteered to pay for Stephens's return to school for vocational training, an offer that Stephens readily accepted. Approximately one year after the accident, Employer offered Stephens two different jobs that Employer had decided Stephens was capable of performing. The first job would have required Stephens to perform general telephone work, the second position would have required Stephens to work a company dispatcher. Stephens, however, for a variety of reasons, declined these offers, and, on July 8, 1999, he filed an application for hearing with the Commission seeking workers' compensation benefits.

1. Because the legislature has made no substantive changes to this section since the inception of this action, we cite to the most current version.

2. Utah Code Ann. § 34A–2–413 (2001), also known as the Total Permanent Disability Act (the Act), outlines the scope and availability of total permanent disability payment to all workers injured by accident in the course of their employment. Subsection (10) of the Act deals with a certain class of catastrophic injuries, specifically, injuries resulting from accidents occurring in the course of employment that cause the loss, or loss of use, of more than one substantial body member. *See id.* § 34A–2–413(10).

¶ 3 Following two hearings on Stephens's application, the Administrative Law Judge (ALJ) overseeing the hearing found that Stephens's injuries qualified him for total permanent disability benefits pursuant to section 34A–2–413(10). Employer requested that the Commission review the ALJ's conclusion. The Commission accepted the request, and subsequently affirmed the ALJ's ruling. Employer now appeals.

## ISSUE AND STANDARD OF REVIEW

■■■ ¶ 4 Employer argues that the Commission improperly interpreted Utah Code Ann. § 34A–2–413(10) to exclude the modifying elements found in section 34A–2–413(7). Employer's argument presents a question of law, which we review for correctness. *See, e.g., Esquivel v. Labor Comm'n,* 2000 UT 66, ¶ 13, 7 P.3d 777. When reviewing a question of law, we give "no deference to the trial judge's or agency's determination, because the appellate court has 'the power and duty to say what the law is and to ensure that it is uniform throughout the jurisdiction.'" *Drake v. Industrial Comm'n,* 939 P.2d 177, 181 (Utah 1997) (citation omitted); *see also Employers' Reinsurance v. Industrial Comm'n,* 856 P.2d 648, 650 (Utah Ct.App. 1993).

## ANALYSIS

¶ 5 Employer argues that the Commission erred in interpreting subsection 34A–2–413(10) as immunizing benefits awarded pursuant to that subsection from the modification provisions articulated in section 34A–2–413(7).[3]

■■■ ¶ 6 The Commission, on the other hand, urges an alternative view, arguing that the plain language of the statute highlights the legislature's intent to treat workplace injuries resulting in the loss, or loss of use, of certain listed body members differently from other injuries that also result in a finding of permanent total disability.

In construing a statute, our aim is to give effect to the legislature's intent in light of the purpose the statute was meant to achieve. When doubt or uncertainty exists as to the meaning or application of an act's provisions, an analysis of the act in its entirety should be undertaken and its provisions harmonized in accordance with the legislative intent and purpose. One of the cardinal principles of statutory construction is that the courts will look to the reason, spirit, and sense of the legislation, as indicated by the entire context and subject matter of the statute dealing with the subject. Further, we have a duty to construe a statute whenever possible so as to effectuate legislative intent and avoid and/or save it from constitutional conflicts or infirmities.

*In re Marriage of Gonzalez,* 2000 UT 28, ¶ 23, 1 P.3d 1074 (citations and quotations omitted). "We therefore look first to the plain language of section" 34A–2–413. *Esquivel,* 2000 UT 66 at ¶ 21, 7 P.3d 777. "[O]nly if there is ambiguity do we look beyond the plain language to legislative history or policy considerations." *Vigos v. Mountainland Builders, Inc.,* 2000 UT 2, ¶ 13, 993 P.2d 207. Finally, in the context of workers' compensation, we must construe the statute " 'liberally in favor of finding employee coverage.' " *Id.* (citation omitted).

¶ 7 Utah Code Ann. § 34A–2–413, titled "Permanent Total Disability—Amount of Payments—Rehabilitations" (the Act), provides that "[i]n cases of permanent total disability resulting from an industrial accident or occupational disease, the employee shall receive compensation as outlined in this section." *Id.* § 34A–2–413(1)(a). The Act then describes the first of two avenues available for an employee to demonstrate the existence of a permanent, totally disabling condition. *See id.* § 34A–2–413(1)(a)–(d). Under this first provision, the claimant/employee bears the burden of proof to show that

(i) the employee sustained a significant impairment or combination of impairments as a result of the industrial acci-

---

**3.** Employer actually separated its argument into two sections, one focusing on the Commission's duty to read the statute as a whole and the other specifically addressing the application of subsec-

tion 34A–2–413(7). However, because both arguments are centered on the impact of subsection (7), we focus our analysis solely on this issue.

dent or occupational disease that gives rise to the permanent total disability entitlement;

(ii) the employee is permanently totally disabled; and

(iii) the industrial accident or occupational disease was the direct cause of the employee's permanent total disability.

*Id.* § 34A–2–413(1)(b)(i)–(iii). The Act also requires the Commission, prior to awarding permanent total disability benefits under subsection (1), to find that

(i) the employee is not gainfully employed;

(ii) the employee has an impairment or combination of impairments that limit the employee's ability to do basic work activities;

(iii) the industrial or occupationally caused impairment or combination of impairments prevent the employee from performing the essential functions of the work activities for which the employee has been qualified until the time of the industrial accident or occupational disease that is the basis for the employee's permanent total disability claim; and

(iv) the employee cannot perform other work reasonably available, taking into consideration the employee's age, education, past work experience, medical capacity, and residual functional capacity.

*Id.* § 34A–2–413(1)(c)(i)–(iv).

¶ 8 Moreover, the Act further limits the finality of a finding of permanent total disability pursuant to subsection (1) until:

(i) an administrative law judge reviews a summary of reemployment activities undertaken pursuant to Chapter 8, Utah Injured Worker Reemployment Act;

(ii) the employer or its insurance carrier submits to the administrative law judge a reemployment plan as prepared by a qualified rehabilitation provider reasonably designed to return the employee to gainful employment or the employer or its insurance carrier provides the administrative law judge notice that the employer or its insurance carrier will not submit a plan; and

(iii) the administrative law judge, after notice to the parties, holds a hearing, unless otherwise stipulated, to consider evidence regarding rehabilitation and to review any reemployment plan submitted by the employer or its insurance carrier under Subsection (6)(a)(ii).

*Id.* § 34A–2–413(6)(a)(i)–(iii). There is no dispute that Stephens's injury was not subject to this involved inquiry. Rather, all parties admit that his injuries fall squarely under subsection (10) of the Act.

¶ 9 Subsection (10) establishes that

(a) The loss or permanent and complete loss of the use of both hands, both arms, both feet, both legs, both eyes, or any combination of two such body members constitutes total and permanent disability, to be compensated according to this section.[4]

(b) A finding of permanent total disability pursuant to Subsection (10)(a) is final.

*Id.* § 34A–2–413(10)(a)–(b). Accordingly, if an employee suffers one of the combination of injuries articulated in subsection (10), there is a conclusive presumption that the employee is permanently and totally disabled.

¶ 10 Employer, however, argues that contrary to the Commission's interpretation, a disability finding under subsection (10) is subject to the same rehabilitation provisions as a disability finding under subsection (1).[5] We disagree.

---

4. The rules governing amounts and duration of compensation are set forth in Utah Code Ann. § 34A–2–413(2)–(5). In that these provisions have no bearing on the instant case, we see no need to further address them.

5. The rehabilitation provision referred to by Employer is within subsection (7), which establishes that:

(a) The period of benefits commences on the date the employee became permanently totally disabled, as determined by a final order of the commission based on the facts and evidence and ends:

¶ 11 Our reading of the plain language of subsection (10) evidences a clear intent to separate the injuries enumerated under subsection (10) from other injuries that may also result in an award of permanent total disability benefits. The qualifying process under subsection (10) is much simpler and fully insulates the affected employee from the requirements of either subsection (1) or subsection (6). Specifically, to qualify for permanent total disability benefits under subsection (10), an employee need show nothing more than the existence of an injury listed within subsection (10) and that the injury was the result of an industrial accident. *See id.* § 34A–2–413(10)(a). Therefore, an employee claiming benefits under subsection (10) is not required to establish that he is totally disabled as all other claimants are required to do pursuant to section 34A–2–413(1)(b)(ii); *see also* section 34A–2–413(11)(a).

¶ 12 A subsection (10) claimant is also immunized from any possible adverse affect that might otherwise arise from the Commission's duty to make specific findings pursuant to subsection (1). *See id.* § 34A–2–413(1)(c)(i)–(iv). Once a subsection (10) claimant has established a qualifying injury, there is a conclusive presumption that the claimant/employee is permanently totally disabled and no further findings are required. *See id.* § 34A–2–413(10)(a), -(b); *see also* section 34A–2–413(11)(a). This presumption, therefore, specifically supercedes the Com-

mission's responsibility to make the following findings, pursuant to subsection (1), before awarding permanent total disability benefits to a non-subsection (10) claimant:

(i) the employee is not gainfully employed;

(ii) the employee has an impairment or combination of impairments that limit the employee's ability to do basic work activities;

(iii) the industrial or occupationally caused impairment or combination of impairments prevent the employee from performing the essential functions of the work activities for which the employee has been qualified until the time of the industrial accident or occupational disease that is the basis for the employee's permanent total disability claim; and

(iv) the employee cannot perform other work reasonably available, taking into consideration the employee's age, education, past work experience, medical capacity, and residual functional capacity.

*Id.* § 34A–2–413(1)(c)(i)–(iv). Accordingly, the plain language of the statute clearly establishes that total permanent disability benefits awarded pursuant to subsection (10) are not subject to, nor controlled by, the claimant/employee's limitations or employability.

¶ 13 Moreover, a disability finding made pursuant to subsection (10) is not sub-

---

(i) with the death of the employee; or

(ii) when the employee is capable of returning to regular, steady work.

(b) An employer or its insurance carrier may provide or locate for a permanently totally disabled employee reasonable, medically appropriate, part-time work in a job earning at least minimum wage provided that employment may not be required to the extent that it would disqualify the employee from Social Security disability benefits.

(c) An employee shall fully cooperate in the placement and employment process and accept the reasonable, medically appropriate, part-time work.

. . . .

(h) The administrative law judge may:

(i) excuse an employee from participation in any job that would require the employee to undertake work exceeding the employee's medical capacity and residual functional capacity or for good cause; or

(ii) allow the employer or its insurance carrier to reduce permanent total disability benefits as provided in Subsection (7)(d) when reasonable medically appropriate, part-time employment has been offered but the employee has failed to fully cooperate.

*Id.* 34A–2–413(7)(a)–(c), (h)(i), (ii). Employer specifically argues that subsections 34A–2–413(7)(a)–(c), -(h)(i)-(ii), and all provisions relevant to these subsections, are applicable to Stephens and all other similarly situated employees. More to the point, Employer urges this court to conclude that employees awarded benefits pursuant to section 34A–2–413(10) are subject to section 34A–2–413(7)(h)(ii), which, were we to adopt this position, based on the evidence Employer presented to the Commission, would result in a marked decrease in the amount of disability Stephens regularly receives.

ject to the requirements of subsection (6) prior to becoming final. Rather, it is final when the claimant/employee establishes the existence of a qualifying injury. *See id.* § 34A–2–413(10)(b). A subsection (10) claimant is not required to submit to a reemployment evaluation, and the Commission may not dismiss a subsection (10) claim due to a claimant's refusal to cooperate with either a reemployment evaluation or a reemployment plan. *See id.* § 34A–2–413(9) (requiring the ALJ to dismiss a permanent total disability claim when a claimant "fails to fully cooperate" with "any evaluation or reemployment plan").

■ ¶ 14 Finally, while it is possible to read subsection (7)(a)(ii) as having been drafted so broadly as to encompass claimants who have been awarded benefits pursuant to both processes, *see id.* §§ 34A–2–413(1), -(6), -(10), to do so would require this court to ignore the clear intent of subsection (10). It is clear that the legislature carefully choose to immunize subsection (10) claims from the rigorous requirements applied to all other claims under the Act. In choosing to eliminate from subsection (10) certain qualifying aspects otherwise applied—i.e., a finding that the claimant is not gainfully employed, a finding that the claimant is unable to perform other work reasonably available, a finding that the quality and nature of the claimant's impairment significantly limits the claimant's ability to perform basic work activities, and the requirement that the claimant submit to a reemployment evaluation, *see id.* § 34A–2–413(1)(c)(i)–(iii), -(6), -(9)—the legislature made the deliberate choice to conclusively certify subsection (10) injuries as per se disabling and not subject to rehabilitation modifications. The legislature clearly established that subsection (10) awards are not negotiable and not subject to reduction. Had the legislature intended any other result, subsection (10) claims would be subject

to the same requirements and conditions applied to claims under subsection (1).[6]

■ ¶ 15 Accordingly, total permanent disability benefits awarded pursuant to section 34A–2–413(10) are not subject to the reemployment reduction provisions found in section 34A–2–413(7).

## CONCLUSION

¶ 16 Based on the foregoing, we conclude that the Commission properly determined that Stephens's injuries fall under the ambit of section 34A–2–413(10), and that benefits awarded pursuant to subsection (10) are not subject to the modification provisions of section 34A–2–413(7).

¶ 17 Thus, we affirm the Commission's order.

¶ 18 WE CONCUR: NORMAN H. JACKSON, Presiding Judge, and PAMELA T. GREENWOOD; Judge.

---

6. Moreover, while we need not extend our analysis beyond the plain language of the statute, a brief glimpse of the legislative history of section 34A–2–413(10) and its predecessors also supports our conclusion that the injuries covered under subsection (10) are and have long been considered conclusively and permanently disabl-

ing. *Cf. Employers' Reinsurance Fund v. Industrial Comm'n,* 856 P.2d 648, 651–52 (Utah Ct.App. 1993) (examining the legislative history of Utah's total permanent disability provisions); *see also* 4 Arthur Larson & Lex K, Larson, Larson's Workers' Compensation Law, § 83.08 (2000) (discussing the total disability presumption).