2013 UT App 224

# THE UTAH COURT OF APPEALS

ALLIED CONSTRUCTION & DEVELOPMENT, INC.,
Petitioner,
*v.*
LABOR COMMISSION APPEALS BOARD,
Respondent.

Memorandum Decision
No. 20120729-CA
Filed September 12, 2013

Original Proceeding in this Court

Darrel J. Bostwick and D. Ryan Robison, Attorneys
for Petitioner
John E. Swallow and Brent A. Burnett, Attorneys
for Respondent

JUDGE JAMES Z. DAVIS authored this Memorandum Decision, in
which JUDGES GREGORY K. ORME and MICHELE M. CHRISTIANSEN
concurred.

DAVIS, Judge:

¶1 Allied Construction & Development, Inc. (Allied) seeks review of the Utah Labor Commission Appeals Board's decision upholding the administrative law judge's (ALJ) determination that Allied exposed its employees to a dangerous work condition in violation of the Occupational Safety and Health Act (OSHA). *See generally* 29 C.F.R. § 1926 (2011) (Occupational Safety and Health Act); Utah Admin. Code R614-1-4(B)(1) (incorporating parts of OSHA's chapter titled "Safety and Health Regulations for Construction" into the Utah Labor Commission's Occupational Safety and Health regulations). We set aside the Board's decision.

¶2 Allied argues that the ALJ's determination, and the Board's approval thereof, is not supported by "the great weight of the

evidence presented." An "agency action [that] is based upon a determination of fact, made or implied by the agency, [must be] supported by substantial evidence when viewed in light of the whole record before the court." Utah Code Ann. § 63G-4-403(4)(g) (LexisNexis 2011); *see also Murray v. Labor Comm'n*, 2013 UT 38, ¶ 19 ("While [section 63G-4-403(4)(g) of the Utah Code] does not explicitly require a certain standard of review, it characterizes the agency action in such a way that implies a 'substantial evidence' standard. This is because we can grant relief under this provision only after reviewing the agency's determination of fact for a lack of substantial evidence.").[1] In other words, we will not overturn an agency's factual findings if they are "based on substantial evidence, even if another conclusion from the evidence is permissible." *Hurley v. Board of Review of the Indus. Comm'n*, 767 P.2d 524, 526–27 (Utah 1988). Additionally, the party challenging factual findings

---

1. We reject Allied's characterization of its argument as presenting a question of law to be reviewed under a less deferential correctness standard. *See Intermountain Slurry Seal v. Labor Comm'n*, 2002 UT App 164, ¶ 4, 48 P.3d 252 ("When reviewing a question of law, we give no deference to the trial judge's or agency's determination, because the appellate court has the power and duty to say what the law is and to ensure that it is uniform throughout the jurisdiction." (citation and internal quotation marks omitted)); *see also Murray v. Labor Comm'n*, 2013 UT 38, ¶ 40 (categorizing the Labor Commission's causation decision as "'law-like,'" "warrant[ing] nondeferential review" because "the ultimate question [at issue was] the legal effect of the facts," while also recognizing that such a determination could have involved "a fact-intensive inquiry" had the facts been at issue). And, in this case, we would reach the same result under a question of law standard of review as we do under the standard applied. *See generally Murray*, 2013 UT 38, ¶ 20 (explaining that "even where section 63G-4-403(4)(g) implies a 'substantial evidence' standard on appeal, . . . we must look outside [the Utah Administrative Procedures Act] to determine what that standard means").

must "properly present the record, by marshaling all of the evidence supporting the findings and showing that, despite that evidence and all reasonable inferences that can be drawn therefrom, the findings are not supported by substantial evidence." *Bhatia v. Department of Emp't Sec.*, 834 P.2d 574, 579 (Utah Ct. App. 1992) (citation and internal quotation marks omitted). Given the dearth of evidence in this case, we determine that Allied has satisfied its marshaling burden.

¶3      The outcome of this case turns on "[t]he mute 'testimony' of a shovel." The Utah Occupational Safety and Health Division of the Labor Commission (UOSH), which issued the citation against Allied, interpreted, and the ALJ agreed, that a shovel left leaning upright against the exposed dirt wall of a trench dug by Allied was indicative of Allied's violation of the OSHA regulation prohibiting a trench to be excavated lower than two feet below the trench support system. *See* 29 C.F.R. § 1926.652(e)(2)(i). A UOSH compliance officer was dispatched to Allied's work site after receiving "a call from a concerned citizen that there were people working in a trench and that they weren't protected in the trench." No more information was provided as to the identity of the caller, the caller's vantage point, what the caller specifically observed, or when. At the work site, the compliance officer observed a shovel of ordinary size leaning against the exposed dirt wall of the trench and noticed that the trench's support system panel was raised above the height of the shovel, approximately eight feet above the trench floor. Though the compliance officer admitted that he did not see anyone in the trench during his site visit, he concluded that an employee must have been in the trench after the panel was raised to explain the presence of the upright shovel. Otherwise, the shovel must have been leaning against the trench panel before the panel was raised and remained upright while the panel was lifted, which the officer considered less likely.

¶4      However, both the compliance officer and the Allied supervisor in charge of the trench project testified that it was entirely possible that the shovel remained upright after the panel

was lifted from behind it and simply shifted from leaning against the panel to leaning against the trench's dirt wall. The supervisor acknowledged that he did not observe whether the panel was raised from behind the shovel or whether an employee placed the shovel in the trench before or after the panel was lifted and testified that he "would guarantee that [the panel] was not over two feet off the bottom . . . when people were down in there working."

¶5 The supervisor further explained that because the trench project required Allied to acquire a "slide rail" shoring system that cost upwards of $300,000, its employees are "pretty careful how they pull [the panels] up . . . [and] how they treat this [safety system]." Indeed, OSHA specifically requires that trench support panels be removed gently. *See* 29 C.F.R. § 1926.652(e)(1)(v) ("Members [of a trench support system] shall be [removed] slowly so as to note any indication of possible failure of the remaining members of the structure or possible cave-in of the sides of the excavation."). Likewise, the officer testified that he had not seen a slide rail system before his visit to Allied's work site and that he was not familiar with how that particular system worked at the time of his visit. Nor was he apprised of the nature of the project or that it required compliance with exacting specifications that routinely involved the shoring panels being raised to adjust the trench's trajectory.

¶6 Notwithstanding this evidence, the ALJ found "it improbable that the panel could have been removed from the bottom portion of the trench [and from behind the shovel] without the shovel falling over." The ALJ noted that the shovel's "pointed blade" "make[s] it less stable in an upright position, and the use of heavy equipment to remove the panel[] makes it less likely that the removal of the panel was a completely smooth one." Accordingly, the ALJ concluded that "the preponderance of the evidence shows that at least one employee was in the trench when the unshored bottom was deeper than 2[ feet]," at which time that employee "leaned the shovel against the wall after the panel had been removed."

¶7     We disagree and conclude that the ALJ's determination was a product of speculation, rather than one that was supported by substantial evidence. "Substantial evidence is more than a mere scintilla of evidence" and "is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Grace Drilling Co. v. Board of Review of the Indus. Comm'n*, 776 P.2d 63, 68 (Utah Ct. App. 1989) (citations and internal quotation marks omitted). Here, there is no information as to what the anonymous caller observed that led him or her to call UOSH in the first place. The only witnesses that testified at the hearing, the compliance officer and the Allied supervisor, stated that they did not observe any employees in the trench after the panel was raised and did not observe when or how the shovel came to be resting against the trench wall. The ALJ's determination upholding the citation was based entirely on her belief that "it [was] improbable that the panel could have been removed" by heavy equipment "without the shovel falling over." This presumed "improbability," however, is not substantial evidence that the shovel was necessarily placed in the trench after the shoring was removed. Evidence explaining the physics at work here was not provided by the parties, and we agree with Allied that the ALJ relied on her own view of physics to decide the case. Therefore, her decision was not supported by substantial evidence. Accordingly, we set aside the Board's decision.

———————